9 So.2d 8
**INTERNATIONAL PAPER CO. v. CURRY,**
Com'r of Revenue, etc.

3 Div. 377.

Supreme Court of Alabama.
June 11, 1942.

Rehearing Denied June 30, 1942.

McCorvey, McLeod, Turner & Rogers, of Mobile, and Benners, Burr, McKamy & Forman, of Birmingham, for appellant.

230

Thos. S. Lawson, Atty. Gen., and John W. Lapsley and J. Edw. Thornton, Asst. Attys. Gen., for appellee.

THOMAS, Justice.

This is the first time the question herein involved has been presented to this Court. The Department of Revenue asserts that there is no law date of liability for franchise tax from newly qualified foreign corporations; that if associated foreign corporations merge, consolidate, or otherwise unite, each such resulting corporation is liable for a separate entrance fee and

separate franchise tax, even though the business be identical, even though the merged corporation succeed to all the rights and powers of the constituent corporations, and even though the assets constituting capital employed be exactly the same.

The issue is whether International Paper Co. No. 1, as described in the bill, was liable for franchise tax for the year 1941. If it were not liable, the Commissioner of Revenue would be authorized to issue a certificate of refund as provided by law. If it were liable, no certificate would be authorized. A subsidiary issue is whether International Paper Company No. 2, as described in the bill, is liable for franchise tax for the year 1941.

This is a proceeding by declaratory judgment to determine appellant's rights and authority to bring this proceeding. Curry v. Woodstock Slag Corp., 242 Ala. 379, 6 So.2d 479.

Prior to January 1, 1941, and during the entire period prior to the merger, International Paper Co. No. 1 owned all the capital stock of Southern Kraft Corporation. It was not qualified to do business in Alabama. Southern Kraft Corporation has been qualified to do business in Alabama for a number of years and engaged in the manufacture of paper and paper pulp. It made its return for franchise tax for the year 1941, based on its assets in Alabama as of January 1, 1941, and paid franchise tax thereon.

On April 7, 1941, International Paper Co. No. 1 qualified to do business in Alabama. At the time of its qualification, it contemplated merging into itself its subsidiary, Southern Kraft, but this was not effected until June 27, 1941. At the time of qualification it filed the statement required for admission fees under Sections 309 and 310 of the 1935 Revenue Act, Code 1940, Tit. 51, §§ 339, 340, and paid admission fees thereon. This statement showed that it expected to employ the capital then employed by Southern Kraft Corporation. The above named sections require the corporation to report the amount of capital employed or to be employed in the state during the calendar year. There is a further provision that if during the year the corporation employed additional capital than that shown in the return, it must pay additional fees based on such capital.

Section 318, General Revenue Act 1935, p. 387, Code 1940, Tit. 51, § 348, requires every foreign corporation to pay annually a franchise tax of $2 on each $1,000 of actual capital employed in this state.

Section 331, General Revenue Act of 1935, p. 393, Code 1940, Tit. 51, § 361, provides that each foreign corporation, immediately after qualifying to do business, shall file return for franchise tax. A failure to file the report within ten days subjects the corporation to the penalties imposed by law.

On the date when International Paper Co. No. 1. qualified, it had no capital actually employed in the State of Alabama and had none for several weeks thereafter. It made return within ten days as required, but by error showed the same capital on which it had paid admission fees, and paid the tax based thereon on April 15, 1941, or less than ten days from date of qualification. Immediately upon discovering its error, it made petition for refund, and the commissioner of revenue declined to issue certificate of refund, stating, in substance, that as a matter of law, the franchise tax was properly due by International Paper Co. No. 1 for the year 1941.

It is shown that the merger was not completed until June 27, 1941, the articles filed showing that International Paper Company No. 1 merged into itself Southern Kraft Corporation. It is further shown that the only capital employed by International Paper Co. No. 1 was the same capital as that employed by Southern Kraft and on which Southern Kraft had paid franchise tax for the year 1941; that deeds of conveyance were not made until long after July 1, 1941.

International Paper Co. No. 1 and International Paper & Power Company of New York consolidated in the State of New York on September 30, 1941, the consolidated corporation assuming the name of International Paper Company, which is identified in the record as International Paper Company No. 2.

On November 27, 1941, this corporation filed its certificate of consolidation in the office of the Secretary of State and qualified to do business in Alabama. It paid entrance fee and franchise tax for the half year. The assets, capital employed, on which franchise taxes were paid by International Paper Company No. 1 and International Paper Company No. 2 were the same as those employed by Southern Kraft Corporation and on which it had paid

franchise tax for the year 1941. It is averred that: " * * * the capital employed in Alabama by the three corporations, to-wit, Southern Kraft Corporation, International Paper Company No. 1, and International Paper Company No. 2, was identically the same, except a small amount which has been added prior to the qualification of International Paper Company No. 2. That the various steps above set out were part of a plan of merger and consolidation of the associated companies under requirements of the Securities Exchange Commission. That while different corporate entities were involved, the capital employed by the various corporations was the same and the business done under the various names was the same, the place of business was the same, and the officers and agents substantially were the same." It is averred that the following franchise taxes and entrance fees were paid on the same capital employed as follows for the year 1941:

| Name of Company | Franchise Taxes | Entrance Fees. |
|---|---|---|
| Southern Kraft Corporation.... | $15,087.56 | ———— |
| International Paper Co. No. 1.. | $13,341.97 | $ 6,741.00 |
| International Paper Co. No. 2.. (for a half-year) | $ 7,665.57 | $ 7,724.57 |
| Total Fees for Franchise and Entrance in 1941.............. | $36,095.10 | $14,465.57 |

■ The several requirements of foreign corporations are stated in Consolidated Coal Co. v. State, 236 Ala. 489, 183 So. 650, as entrance or qualifying fees, annual permits, privilege tax, franchise tax and property tax and need not be repeated here.

■ The franchise tax of a foreign corporation is based on the actual amount of capital employed in the state. Constitution, § 232; General Acts of Alabama 1935, § 318, p. 387, Code 1940, Tit. 51, § 348; Consolidated Coal Co. v. State, supra; State v. Southern Nat. Gas Corp., 233 Ala. 81, 170 So. 178; Southern Nat. Gas Corp. v. State of Alabama, 301 U.S. 148, 57 S.Ct. 696, 81 L.Ed. 970.

■ Such capital employed is that amount employed at the time fixed for liability to accrue; which (a) as to a previously qualified corporation is January 1st, and (b) as to a newly qualified corporation is that date of qualification. General Acts of Alabama of 1935, § 324, p. 390, Code 1940, Tit. 51, § 354; State v. National Cash Credit Association, 224 Ala. 629, 141

So. 541; State v. Anglo-Chilean Nitrate Corporation, 225 Ala. 141, 142 So. 87.

Appellant's contention is that franchise tax can be measured only by capital actually employed and that any other basis of measuring the value of the franchise is clearly unconstitutional. Section 232 of the Constitution provides as follows: "No foreign corporation shall do any business in this state without having at least one known place of business and an authorized agent or agents therein, and without filing with the secretary of state a certified copy of its articles of incorporation or association. Such corporation may be sued in any county where it does business, by service of process upon an agent anywhere in the state. The legislature shall, by general law, provide for the payment to the State of Alabama of a franchise tax by such corporation, but *such franchise tax shall be based on the actual amount of capital employed in this state.* Strictly benevolent, educational, or religious corporations shall not be required to pay such a tax." Skinner's Alabama Constitution Annotated, p. 829. [Italics supplied.]

This command of the Constitution that such "franchise tax shall be based on the actual amount of capital employed in this state," is direct and absolute in its terms. It is urged that any other basis of measurement would be invalid. The statute, Section 318 of the 1935 Revenue Act, p. 387, is in the words of the Constitution, indicating the purpose of the Legislature to make the statutory levy conform with the Constitution.

Section 309 of the Revenue Act of 1935 (Acts 1935, p. 381) provides for the qualification of foreign corporations and that the tax required shall be based on the actual amount of capital employed or to be employed in the State. Section 310, Acts 1935, p. 382, requires the report of capital employed or to be employed during the calendar year. Section 311, Acts 1935, p. 383, Code 1940, Tit. 51, § 341, provides that the admission fee "shall be paid but once."

It will be borne in mind that there is a distinction between the franchise tax and the entrance fee and the bases on which these taxes are computed are not subject to reasonable confusion. The entrance fee is a legislative levy. The franchise tax is a constitutional levy. Both are levied on different bases. The constitution makers left no discretion to the legislature as to the levy of the franchise tax or of the

basis on which it is to be measured. The entrance fee is a legislative levy and there is no restriction in the constitution on the manner in which the legislature requires it to be measured.

■ The legislature has required a corporation at the time it enters the State to disclose what the capital employed at the time of entrance is and the capital which it proposes to employ during the remainder of the calendar year. There is the provision of the statute that should the corporation employ a greater amount of capital during the year than that shown at the time of entrance, it must report and pay an additional entrance fee thereon. That is, a corporation is liable for entrance fee whether it has any capital employed at the time of entrance or not, provided it employs capital in the state at any time during the year. This is not true, however, of the franchise tax. While a corporation is liable for franchise tax if it has capital employed in the state, there can be no franchise tax unless capital is employed. The tax department, the legislature and this court can but obey the mandate of the constitution.

■ Liability for franchise tax is as of a fixed date and there is no authority for the tax department to assess a tax based on liability other than of the law date of liability. While the Constitution makers definitely required the levy of a franchise tax and provided the basis of such levy, the machinery therefor was left to the Legislature. This is the holding in Penn Mutual Life Ins. Co. v. State, 223 Ala. 332, 135 So. 346.

The provision or agency for the collection of the tax, and the law date of liability have been provided by the legislature. In respect to previously qualified corporations, the law date of liability is unquestionably January 1. It is a matter of common knowledge that this provision of law has been so administered by the tax department since the assessment and collection of franchise taxes were transferred to the State Tax Commission in 1919. As early as 1923 we find the attorney general in opinions appearing in the Attorney General's Reports 1922–1924, pp. 149, 162, approving January 1 annually as the date on which the tax accrues for that year. From the named report of the attorney general, pp. 149 and 162, we quote, as follows:

"Section 16 of the General Revenue Act of 1919 [Acts 1919, p. 291], provides:

" 'That every corporation organized under the laws of any other State, nation or territory, and doing business in this State * * * shall pay annually to the State an annual franchise tax of sixty cents on each one thousand dollars of the amount of capital actually employed in this State.'

"Section 24 of said Act provides:

" 'That the franchise tax of foreign and domestic corporations as authorized and levied by this act, shall run according to the calendar year,' etc.

"Where a foreign corporation has been, as in the case under consideration, qualified to do business and has been doing business in this State for a year or more before the year for which the tax is being assessed, it has been the practice with the State Tax Commission to get its data for assessment from the balance sheet of such corporation, for the business done in this State, as of the end of the last preceding fiscal year of such corporation, taking the status, at that time, as being truly representative of the condition of the corporation for the purpose of assessing the franchise tax for the next succeeding calendar year. This, in our opinion, is, as a rule, the most practical method of arriving at a determination of the amount of capital actually employed by such corporation in this State."

And from p. 162 of said report:

"Section 232 of the constitution of Alabama provides, in regard to foreign corporations, as follows:

" 'The legislature shall, by general law, provide for the payment to the State of Alabama of a franchise tax by such corporation, but such franchise tax shall be based on the actual amount of capital employed in this state.'

"The Legislature in carrying out the provisions of this requirement of the constitution by Section 16 of the Revenue Act of 1919, provided as follows:

" 'That every corporation organized under the laws of any other State, nation or territory, and doing business in this State, * * * shall pay annually to the State an annual franchise tax of sixty cents on each one thousand dollars of the amount of capital actually employed in this State.'

"The authority for and the duty of assessing annual franchise taxes was placed by the Revenue Act of 1919, with the State Tax Commission. In order to ascertain as

nearly as practicable the amount of capital actually employed in Alabama, by a foreign corporation doing business in Alabama, the State Tax Commission adopted for its general method that of taking the amount of capital employed in this State at the date of the end of the last fiscal year preceding January 1st of the year for which the franchise tax is payable. * *."

The statute supports this opinion in Section 324 of the Acts of 1935, Code 1940, Tit. 51, § 354, providing, in part, as follows: "The franchise tax of domestic and foreign corporations as authorized and levied by this title shall run *according to the calendar year* and shall be due on the first day of April of each year for the tax of the current· calendar year. Such corporation shall be allowed thirty days after the first day of April within which to pay said tax." [Italics supplied.]

There is the further provision in § 324 (Acts 1935, p. 390) that if a foreign· corporation make the required report, it shall have thirty days after assessment in which to pay the tax.

Section 321, Acts 1935, p. 388, Code 1940, Tit. 51, § 351, provides for a report to the State Tax Commission and that such statement shall show "the balance sheet of such corporation as shown after closing its books on December thirty-first," preceding or after the closing of its books at the end of its preceding fiscal year, and that such written statements shall be made and filed between the 1st day of January and the 15th day of March of the calendar year for the franchise tax to be paid for that calendar year for said corporation. Section 322, Acts 1935, p. 389, Code 1940, Tit. 51, § 352, imposes a heavy penalty for failure to make the report by March 15th. Section 327, Acts 1935, p. 391, Code 1940, Tit. 51, § 357, provides that the State Tax Commission shall, as soon as possible after the required report has been filed with it by a foreign corporation, ascertain and assess the amount of the franchise tax due by such corporation and that assessment is declared to have the effect of a judgment on which execution may issue.

In State v. National Cash Credit Ass'n, 224 Ala. 629, 141 So. 541, 543, this court said: "Having qualified to do business in Alabama, appellee filed its tax returns, including returns for franchise tax purposes, as of December 31, 1929, *as required by law.*" [Italics supplied.]

· In State v. Anglo-Chilean Nitrate Corporation, 225 Ala. 141, 142 So. 87, 92, speaking through Justice Gardner, now Chief Justice, this court said: "The tax commission based the assessment upon the value of the nitrate on hand and in storage in Alabama on December 31, 1929 amounting in value to $712,846.72, with nitrate on hand outside of Alabama of the value of $5,000,000. The amount in storage on that particular date is merely taken as a fair estimate of the capital actually employed, but the amount actually sold in this state is not made to appear. The amount of sales may have been many times the above-stated amount, but, if there remained on hand only the nitrate of the value of $712,-846.72 on December 31, 1929, the tax is to be so measured by that sum and not otherwise."

In State v. Southern Natural Gas Corp., 233 Ala. 81, 170 So. 178, 180; Southern Nat. Gas Corp. v. State of Alabama, 301 U.S. 148, 57 S.Ct. 696, 81 L.Ed. 970, the same construction was given, the court saying: "The foregoing statement is correct as of January 1, 1931, the accrual date of the tax assessed for such year and upon which this appeal is based."

From the foregoing, under the terms of the statute, as it is thus approved by this Court, the law mandate setting the time of liability of previously qualified corporations is January 1st. So of the subsidiary corporation in question.

██ It follows from our authorities that the law date of liability of the newly qualified corporations is the date of qualification under the Alabama laws. The status on such date determines the liability of franchise for such year in which the corporation qualified to do business in this state. Section 330 provides that each domestic corporation immediately on its organization shall make and file with the State Tax Commission the statement required by this Act. Acts 1935, p. 393, Code 1940, Tit. 51, § 360. We have indicated that the corporation is subject to a penalty of $10 a day for failure to make the report within ten days from organization. The domestic corporation is likewise required to pay the tax within 30 days after organization. The only date of liability for a domestic corporation is the date of organization and that the amount of capital stock existing on such date determines its liability for such year. It is clear that once (1) a corporation (do-

mestic) has been organized, (2) has made its report for franchise tax based on its capital stock at the time of organization, and (3) has paid its franchise tax based on such capital stock, that it (4) cannot thereafter be subject to additional franchise for such year, even though (5) later in the year it should increase its capital stock. We find no statutory indication by the Legislature to charge a domestic corporation an additional franchise tax because subsequent to its organization it increases its capital stock.

We are particularly concerned with a foreign corporation and find almost the identical provisions. Section 331, Code 1940, Tit. 51, § 361, requires each foreign corporation immediately after qualifying to do business to file a franchise tax return. There is a penalty of $10 a day for failure to make such return within ten days after the corporation qualifies. The general provision, Section 327, requiring the Tax Commission to assess the tax as soon after report is received as possible, *applies to newly qualified corporations as well as to* previously qualified corporations.

■ This provision of the Legislature has definitely required the collection of a franchise tax, but has provided that such tax shall be based on the status of the corporation at the time it qualified. If at such time it had no capital employed in the State, it was due no tax. The mere fact that in filing its statement for entrance fee purposes it showed an intent to employ capital at a future date *cannot authorize the levy of a tax on any other basis than that fixed by the Constitution,* towit, capital employed on the date of qualification.

There is an absence of any legislative intent to make domestic corporations liable for additional franchise taxes for such year because subsequent to organization they increased their capital stock. The tax department could not rightfully hold a domestic corporation return made at the time of organization until some future date in the year to ascertain whether the corporation increased its capital stock. It has no such authority. To the contrary, the corporation is penalized for failing to pay the tax within thirty days thereafter. By the same token, the department of revenue has no right to assess franchise taxes against a foreign corporation on the theory that at some date subsequent to qualification, such corporation will employ capital

in the state; nor does the tax department have a right to hold the return until such time as the corporation actually employs capital and makes assessment for franchise tax thereafter. Such a difference in treatment of domestic and foreign corporations would be discriminatory. The reason for the Supreme Court of the United States invalidating the tax in Southern Railway Co. v. Greene, 216 U.S. 400, 30 S.Ct. 287, 54 L.Ed. 536, 7 Ann.Cas. 1247, was on account of discrimination against foreign corporations.

The decisions of the Supreme Court show a scrupulous regard that no discrimination be practiced as touching domestic and foreign corporations and that the two classes of corporations enjoy "equal protection." To permit a domestic corporation to pay franchise tax based on its capital stock at the time of organization and subject a foreign corporation to the payment of a tax based not on capital employed at the time of entrance, but at some future period when the department of revenue chooses to assess it, is a discrimination in the highest degree, and would approach a violation of the 14th Amendment to the Constitution. The idea that tax liability is to be determined as of a particular date or time is universally recognized. The most notable example of this is the oldest and perhaps still the most basic of our tax levied—the property tax. Valuation of property is as of October 1 annually. The assessments, however, both by the state department of revenue and the boards of equalization are many months later. License taxes are due October 1. Motor vehicle taxes are due November 15. Permits are due on or before February 1 annually. Sales and use taxes are due by the 20th of the month following collection. This illustrates the several provisions of the revenue law, and demonstrate that in them all there is a fixed date or time when liability accrues. Further harmony is shown by the established statutory scheme and the legislature fixed the liability of (1) previously qualified corporations as of January 1, and (2) of new corporations as of the date of organization or qualification.

A corporation has a certain amount of capital employed on January 1. The statute says that the tax shall run according to the calendar year. It is a privilege tax payable in advance. Since the adoption of the franchise tax, at least back to 1919,

where a previously qualified corporation makes its return, shows its capital employed on January 1 and pays franchise tax thereon, it is not required to pay further franchise tax for such year. This is the result though it acquire during that year a great amount of additional capital and employ it in its business.

Applying the foregoing analogy to a newly qualified corporation, it may be assumed that at the time it qualified to do business it had employed within the State $100,000 which was all that it, in good faith, planned to employ during that year. It paid the admission fees on such $100,000 and made return for franchise tax and its franchise tax was assessed on the basis of $100,000. Such assessment became final.

Distinguished counsel for appellant answer the question now propounded that subsequent corporate plans at a later period in the calendar year, acquiring and employing additional capital, would require no additional franchise tax to be paid for the reason that such corporation had met the requirements of the law and that based on the return made to the department of revenue had had an assessment which necessarily closed the matter for such calendar year. Counsel concede that this is not true of the admission fee because under the terms of the statute such matter is not closed until the end of the calendar year and the payment on "all capital employed during the year," is made.

In Consolidated Coal Co. v. State, 236 Ala. 489, 183 So. 650, 651, this court, speaking through Justice Bouldin, stated the measurement of the tax as follows:

"The franchise tax upon foreign corporations authorized by Section 232 of the Constitution of Alabama 'based on the actual amount of capital employed in this state,' and levied by the General Revenue Law of 1935 (Acts of 1935, p. 387, Sec. 318 [Code 1940, Tit. 51, § 348]) upon foreign corporations 'doing business in this State,' is an excise tax for the privilege of exercising corporate functions in Alabama, measured by the actual amount of capital employed in Alabama in the exercise of such corporate functions, capital employed in a business for which the corporation was created and has its existence as a corporate entity.

"It is not the qualifying fee, or fee for an annual permit, paid as a condition to its right to do business in Alabama. * * * Neither is it the license or privilege tax imposed for the doing of a specified business, payable alike by persons or corporation. Section 329, page 392, Revenue Act of 1935 [Code 1940, Tit. 51, § 359]."

It follows from this that in order for there to be a liability for franchise tax, there must be capital employed. If there is no capital employed, no franchise tax is due, even though return showing such fact is required, but the annual permit is required and this is shown to have been paid. Such permit afforded a right to do business.

Counsel admit that under the language and mandate of the Constitution and statute, as above quoted, there is no direct relation between the "admission fee" and the franchise tax; that the basis on which the admission fee is paid may or may not be the measurement of the franchise tax which depends upon whether the capital on which the admission fee is based is actually employed at such time or within ten days thereafter or whether it is "to be employed at some future undetermined date within the calendar year."

It is rightly conceded that there can be no objection to the corporation having no capital employed at the time of qualification, making a return and paying no tax if the statutes do not require such payment. Speaking through Mr. Justice Foster, in State v. Pullman Standard Car Mfg. Co., 235 Ala. 493, 179 So. 541, 548, 117 A.L.R 498, this court said: "That is exactly this situation. This taxpayer has simply and only set itself up in conformity to the law and proposes to pay the taxes which the law says are payable when so set up. The State cannot complain when the tax payer resorts to a legal method available to him to compute his tax liability. The State is now saying to him that although you did what we said you could do with a certain result, that result is more beneficial to you than we intended. This Court cannot change the law as thus made by our Constitution and statutes."

Under the decisions of this court, the capital employed by Southern Kraft Corporation, by International Paper Co. No. 1, and by International Paper Co. No. 2, being the same, no franchise tax should be imposed on International Paper Co. No. 1, the tax having been paid by its subsidiary, Southern Kraft Corporation, on the same capital and for the same year. This principle seems to be firmly established by our court.

In State v. National Cash Credit Ass'n, 224 Ala. 629, 141 So. 541, 544, the foreign corporation owned the capital stock of a domestic corporation on which the domestic corporation had paid the domestic corporation franchise tax. An attempt was made to impose a franchise tax on the foreign corporation because of such stockholdings. The Court denied this, stating:

"The great principle of equality and uniformity in taxation, avoidance of double taxation, as manifest in the Constitution and statutes, we think, furnishes the controlling reason opposed to the state's contention.

"The franchise tax paid by the domestic corporation covers the same capital stock now sought to furnish the basis for a franchise tax against the stockholder also.

"True, it is said the domestic franchise tax is for the privilege of corporate existence; but corporate existence is for the purposes of its creation; and the one franchise tax covers all the business it may do by virtue of its Alabama franchise. The stockholder, whether an individual or a foreign corporation, bears a portion of this domestic franchise tax. To impose another like franchise tax on the corporate stockholder because of its investment in such stock is discriminatory.

"Whether this could be done as a condition to holding stock in domestic corporations we are not considering. What we hold is the policy and spirit of our laws do not so provide."

Supporting this view is Consolidated Coal Co. v. State, 236 Ala. 489, 183 So. 650, 652, wherein it is held that a corporation may operate through its subsidiaries in a manner which will lawfully minimize franchise taxes. The opinion dealt with a parent and a subsidiary corporation. It should be borne in mind that the International Paper Company and Southern Kraft were parent and subsidiary, respectively, and that the International owned all of the capital stock of the Southern Kraft. The Court held that a foreign corporation which would purchase coal lands with machinery and appurtenances thereon in Alabama and lease the properties on a royalty basis to its own subsidiary for the mining and marketing of coal was liable for franchise tax on the property thus employed as a foreign corporation, though the business was conducted wholly in the name of the subsidiary as lessee in the absence of payment by subsidiary of tax on any portion of the property.

In discussing the question, this court said: "To permit two foreign corporations, one the beneficiary of all corporate activity, the other its subsidiary agency for operating purposes, to employ capital in their corporate enterprise in this State, and neither pay a franchise tax on the capital so employed is to evade the franchise tax law."

The learned trial judge says that the facts are materially different from those in Consolidated Coal Company case, supra, where both parent and subsidiary were qualified on January 1. The parent owned the assets; the subsidiary operated them. This court held the parent liable and said: "The lessee corporation is purely a subsidiary of the lessor corporation. The lessor owns all the stock of the lessee. They have the same directorate and officers." 236 Ala. at page 492, 183 So. at page 652.

International Paper Co. No. 1 owned all the stock of Southern Kraft Corporation, the operating corporation. From the time of qualifying, April 7, 1941, to the merger on June 27, 1941, there was no difference in the relationship existing between them and between Consolidated Coal and its subsidiary, except that Southern Kraft owned and operated the assets. International Paper and Southern Kraft had substantially the same officers and agents. This court said:

"A controlling fact in this case is that these corporate properties were employed in the corporate enterprise, the mining and marketing of coal, the corporate business for which both corporations exist.

"The lessee corporation (the subsidiary), as disclosed by the agreed facts, did not include these properties as capital employed by it. Had it done so admittedly the ultimate burden of the tax would fall on the parent corporation, the owner of the stock of the subsidiary." 236 Ala. at page 493, 183 So. at page 652.—[Parenthesis supplied.]

Southern Kraft, the subsidiary, did include all the properties in its return and paid tax thereon. Thus, admittedly, the "ultimate burden of the tax" fell on International Paper Co. No. 1, "the parent corporation," the owner of "all" the stock of the subsidiary. The court concluded its opinion as follows: "There should be no double franchise tax based on the same employed capital. If any portion thereof be allocated to the franchise tax of the subsidiary, there should be a proportionate reduction in the franchise tax of the parent corporation. But where, as here, the sub-

sidiary, acting through a common management, pays no franchise tax based on the capital so employed, the parent company is properly chargeable with such franchise tax. As before observed, the burden of the tax in this set up, whether assessed against the one or the other, would ultimately fall on the parent company." 236 Ala. at page 493, 183 So. at page 652.

Hence, as we understand the facts in Consolidated Coal, supra, they are identical or closely analogous with the facts in the case at bar and the principle to be applied is the same.

The theory that Southern Kraft Corporation, the wholly owned subsidiary, having paid the franchise tax on the same capital employed for the same year, such tax should be credited against any amount due by the parent corporation, International Paper Co. No. 1, finds support in State v. Southern Natural Gas Corp., 233 Ala. 81, 170 So. 178, 183, in that it was declared therein: " * * * The policy of the state as to domestic and foreign corporations is uniform as far as possible; hence the franchise tax on foreign corporations is levied upon the right to do business. This is stated by Mr. Justice Bouldin in Investors' Syndicate v. State, 227 Ala. 216, 149 So. 83, 85, saying: 'The franchise tax is for the privilege of exercising corporate functions, and measured by the capital employed in Alabama.' Domestic and foreign corporations qualifying enjoy the same powers, protection, and advantages under the law. * * * "

International Paper Company No. 1, being the owner of all the capital stock of Southern Kraft Corporation in equity owned all the capital employed by Southern Kraft. When International Paper Co. No. 1 merged into itself Southern Kraft Corporation, it merely gave legal effect to what had already been true in equity, and hence Southern Kraft having paid franchise tax on its capital employed, no additional tax should be imposed on International Paper Co. No. 1, because it assumed legal title to the assets which already it owned in equity.

It is said by counsel for appellant that under the terms of the statute, International Paper Co. No. 1 was not liable for any franchise tax for the year 1941, and that under the decisions of the Supreme Court, if there can be any technical liability, any amount due by it will be limited to any excess over and above the amount paid by Southern Kraft, its wholly owned subsidiary.

Brief presents articles of merger of these corporations, which are not made a part of the record presented to this court. The laws of the consolidating and merging of corporations of the states here pertinent are not pleaded. The articles of merger referred to in brief of counsel not being contained in the record, we advert to the nature or character of a corporation and its common law history. Many definitions thereof are contained in 18 Corpus Juris Secundum, Corporations, § 1 et seq. p. 366. We find no authority under the common law for consolidation or merger of such corporate entities which Mr. Justice Bijur defines as the useful and "usual collection of jural relations." Farmers' Loan & Trust Co. v. Pierson, 130 Misc. 110, 116, 117, 119, 222 N.Y.S. 532, 544; People v. Knapp, 206 N.Y. 373, 381, 99 N.E. 841, 844, Ann.Cas.1914B, 243; In re Steinberg's Estate, 153 Misc. 339, 274 N.Y.S. 914, 917.

It is declared in Peet & Co. v. Hatcher, 112 Ala. 514, 521, 21 So. 711, 57 Am.St.Rep. 45, that where there is no proof of the law of another state, nor judicial knowledge of the origin of such state, which would raise the presumption that the common law prevails, it will be presumed that the law of the forum is the law of such state on the question under consideration. To like effect is Nelson v. Darley, 239 Ala. 87, 194 So. 177. And this is true of the qualifying and taxing status of this state to be applied and administered (under the rules of equality) in admitting foreign corporations to do business within our borders and the requiring of a just contribution for the opportunity and protection afforded and equality required under the constitution and statutes of our state.

The Alabama statutes of merger were discussed in Alabama Power Co. v. McNinch et al., 68 App.D.C. 132, 94 F. 2d 601. The conclusion reached was that under the Alabama law the question as to what happens to or becomes of constituent corporations is to be determined by the terms of the agreement of merger. Applying this rule to the Southern Kraft Corporation, which has paid its franchise tax, it results that it lives as a component part of the surviving corporation, the International Paper Company. To deny to International Paper Company the rights, franchises and privileges to which Southern Kraft was entitled at the time of the

merger is in effect a denial of such rights, franchises and privileges to Southern Kraft Corporation itself, notwithstanding that Southern Kraft has paid its franchise tax.

■ Code 1940, T. 10, § 96, provides for the fees for consolidation or merger of corporations; § 97 provides the powers, duties and liabilities of consolidated or merged corporations; § 98 provides for rights, privileges, powers, franchises and property vested in consolidated or merged corporations to be vested in the consolidated corporation, etc. It cannot be said that these statutes apply only to domestic corporations. Code 1940, T. 10, § 95.

Would it not be perfectly fair to say that in dealing with foreign corporations the only franchise tax payable should be upon the value by which the property of the consolidating or merging corporation exceeded the property of the corporations which had already paid their franchise tax? This principle of taxation is recognized in the following decisions: State v. National Cash Credit Ass'n, supra; Southern Natural Gas Corp. v. State, supra; Consolidated Coal Co. v. State, supra.

In the case of Alabama City G. & A. R. Co. v. Kyle, 202 Ala. 552, 555, 81 So. 54, 57, the court said: "An inspection of the agreement and acts of consolidation to form this defendant corporation shows no limitations or restrictions on the powers possessed by the old corporations; hence the new corporation possesses all the powers which each and all of the old corporations possessed without any restrictions by way of agreement."

In 23 Am.Juris. Foreign Corporations, § 410, it is observed: "When corporations of several states are consolidated, the business of the old corporations is not wound up nor is their property sequestrated or distributed; the very object of the consolidation and of the statutes of the respective states which permit it, is to continue the business of the old corporations. The new organization takes the powers and faculties designated in the acts authorizing the consolidation and it is asserted that it takes no more and no less."

Appellee's counsel collects the authorities defining the foreign corporation franchise tax and that it is an excise tax for the privilege of exercising corporate functions in Alabama measured by the actual amount of capital employed in Alabama in the exercise of such corporate functions. General Acts of Ala.1935, p. 256, Code 1940, T. 51, §§ 348, 349 et seq.; Hollingsworth & Whitney Co. v. State, 241 Ala. 96, 1 So.2d 387. It is not the qualifying fee or admission tax imposed upon foreign corporations nor is it the annual permit fee required to be paid by foreign corporations. Gen.Acts 1935, p. 256, Code 1940, T. 51, § 345; Consolidated Coal Co. v. State, 236 Ala. 489, 183 So. 650, supra; Nelson v. Darley, 239 Ala. 87, 194 So. 177.

■ After adverting to the history of the corporations, it is declared that the modern business corporation as recognized in the United States is solely a creature of legislative authority, chartered by special legislative acts or organized under general statute which constitute its charter and the source of its power. In the absence of pleading and proof of the lex loci contractus, the lex fori must be applied. We have thus laid out of consideration the terms of the consolidation or merger agreements in question and the law of the place of domicile not pleaded. The authority for imposition of the respective fees and taxes to be imposed on a foreign corporation qualified in this state and employing its capital in its business here are judged by the laws of this state as we have indicated.

It should have been observed at the outset and as appellee's counsel insist that it is agreed by respective counsel that the business conducted in Alabama by Southern Kraft Corporation in the year 1941 was conducted in the name of and by Southern Kraft Corporation until, towit, June 27, 1941; and thereafter until, towit, November 17, 1941, said business in Alabama was conducted by and in the name of International Paper Company No 1; and thereafter said business in Alabama was conducted by and in the name of International Paper Company No. 2.

It is further insisted by appellee's counsel that while the merger of Southern Kraft Corporation into International Paper Company No. 1 was completed on June 27, 1941, it took over the operation of the business in Alabama formerly conducted by Southern Kraft Corporation as contemplated at the time of the payment of the tax. Further, that the record shows that the actual date of the delivery of the deeds consummating the whole matter of consolidation and merger was of date of De-

240

cember 23, 1941, as touching the International Paper Company No. 1, a New York corporation, and International Paper Co. No. 2, a Delaware corporation.

When the questions presented are considered and the rule that express authority is to be found for the tax imposed by the state, we are at the conclusion that the franchise tax is measured only by the capital actually employed as of the date of liability, provided there is no evasion in this respect; viz., at the due date of the tax, on January 1 for the Kraft Corporation, and at the date of the qualification of the newly organized or qualified corporation. We are of the opinion that since the Kraft Corporation paid the franchise tax for 1941, the International Paper Company No. 1 had no capital actually employed in Alabama on or before the date of its qualification on April 7th, of the year in question, and no evasion appears, and hence was not liable for the franchise tax for the year 1941. That is, the tax paid by its subsidiary, Southern Kraft Corporation, and its operation and employment of the capital in the state, should be credited to International Paper Company No. 1, and this will leave no amount due by that corporation for the calendar year in question.

As touching the liability of International Paper Company No. 2 for the franchise tax for the year 1941, and in the absence of its consolidation agreement in New York and 'he conceded fact that such consolidation ᵤok place November 17, 1941, when it filed its certificate of consolidation, it had on such date capital employed in Alabama and should be credited with such part of the tax paid for it by the Southern Kraft Corporation against any franchise tax due by International Paper Company Number 2 for such one-half calendar year. It would be liable only for the excess over and above the amount paid by Southern Kraft Corporation which amount is to be ascertained by the facts as to its capital employed in the state during the calendar year when doing business in this state.

We are of opinion that the Commissioner of Revenue is authorized to issue appropriate certificates of refund in the respects indicated and for which there is no liability as to one of these corporations and only partial liability on the part of the last formed corporation, International Paper Company Number 2.

The decree of the circuit court is reversed and one here rendered as indicated.

Reversed and rendered.

All the Justices concur, except KNIGHT, J., not sitting.