26 So.2d 590

**DOWLING, Com'r of Revenue, v.
TEXAS CO.**

3 Div. 456.

Supreme Court of Alabama.

June 13, 1946.

Wm. N. McQueen, Atty. Gen., John W.
Rish, Asst. Atty. Gen., Gardner F. Goodwyn, Jr., of Montgomery, and H. Grady
Tiller, Asst. Atty. Gen., for appellant.

White, Bradley, Arant & All, Frontis H. Moore, and Douglas Arant, all of Birmingham, for appellee.

STAKELY, Justice.

This is an appeal by H. G. Dowling, as Commissioner of Revenue of the State of Alabama, from a declaratory decree of the equity court. The purpose of the suit is to construe Sections 339–342, Title 51, Code of 1940, so as to determine whether a foreign corporation which has paid the qualification fee or admission tax at the time it qualified for business in the State of Alabama may be required several years later to pay an additional qualification fee or admission tax because of an increase in capital employed in the state over the amount of capital employed at the time of qualification.

The court held in effect that payment of such additional amount could not be required of The Texas Company, a Delaware corporation (appellee).

The bill was filed by the Texas Company. Briefly stated the allegations of the bill show the following: On October 2, 1941, The Texas Company, a Delaware corporation, qualified for business in Alabama in accordance with the provisions of Article 2, Chapter 8, Title 10, § 192 et seq., Code of 1940, and sections 339, 340 of Article 1, Chapter 15, Title 51, Code of 1940, and Article 2, § 345, Chapter 15, Title 51, Code of 1940. On the aforesaid date The Texas Company filed with the Department of Revenue a statement, as required by § 340, Title 51, Code of 1940, showing that the actual amount of capital employed or to be employed by it in the State of Alabama was $1,944,000. At the same time The Texas Company paid $2,013, being the amount due as qualification fee or admission tax, under § 339 et seq., of Title 51, Code of 1940. Thereafter The Texas Company paid annually the permit fee and franchise tax as required by law. In the year 1945, as shown by its franchise tax return, the amount of capital employed by The Texas Company in the state, upon which its franchise tax was assessed, was $2,382,000 or $439,000 in excess of the amount of capital employed by it at the time it qualified and was admitted for business in the state in 1941. The bill further shows that complainant, as Commissioner of Revenue, claims that under § 339 et seq., of Title 51, Code of 1940, The Texas Company is obligated to pay an additional qualification fee or admission tax in the sum of $439 because of the aforesaid increase in capital employed in the state in the year 1945 over the amount of capital employed in 1941. The Texas Company denies that it is obligated to pay such additional amount of $439 or any other amount as qualification fee or admission tax in addition to its aforesaid payment of $2,013.00 and that the claim of the Commissioner is without justification and is based upon an erroneous construction of the pertinent statutes.

The answer of the respondent, H. G. Dowling, as Commissioner of Revenue of the State of Alabama, admits all material facts, but denies all conclusions of law. Both complainant and respondent joined in the prayer for a declaratory decree. The case was submitted on bill and answer with the result as aforesaid.

The statutes primarily involved are §§ 339, 340 and 341 of Title 51, Code of 1940. Section 339 provides as follows:

"No corporation created by the law of any other state or any foreign country, except foreign corporations which qualified to do business in this state prior to July 10, 1935, shall engage in or transact any business in this state without first having paid to the department of revenue for the use of the state the following qualification fee or admission tax: * * * (The amounts to be paid are then set out.) Provided that if after qualification a corporation shall employ an amount greater than that on which admission fees have been paid, it shall immediately report and pay such additional amount. Strictly benevolent, educational or religious corporations shall not be required to pay such tax."

Section 340, which provides for the statement to be filed by a foreign corporation with the Department of Revenue at the time of qualification, requires that such foreign corporation shall, at the time of paying such tax, file with the Department of Revenue a statement showing the name of the corporation, address, total authorized capital stock, and other data, "* * * and also a statement showing the actual amount of capital employed in this state by such corporation, if such corporation is at the date of the filing of such statement engaged in business in this state, and if such corporation is not at the date of filing such statement engaged in business in this state, the statement shall state the actual amount of capital to be employed by such corporation in this state during the calendar year, which statement shall be sworn to by the president or other executive officer and the secretary of said corporation, before some officer authorized under the laws of this state to administer oaths or take acknowledgments of conveyances * * *."

Section 340 then provides that if the Department of Revenue has any reason to believe that such statement is untrue it

shall have the power to examine the books and records of the corporation and that if, upon such examination, it finds

"That the amount of the capital to be employed, or which is employed, by the said corporation in this state, is in excess of the amount stated in such statement filed by such corporation, it shall make demand upon such corporation * * * for the payment of the difference in amount between the admission tax for which such corporation would be liable upon the amount of capital set forth in said statement and the amount of admission tax for which said corporation would be liable upon the amount of said capital as ascertained by the department of revenue from its inspection of the books, records, and papers of such corporation, and any such corporation which shall fail or refuse for the period of sixty days after the date that such demand is made by the department of revenue to pay such amount found by the department of revenue to be due by it in excess of the amount shown to be due by it in such statement, shall not be permitted to engage in business or do any act in its corporate capacity in this state at any time within five years from the date of such demand."

Section 341 provides as follows:

"Payment of admission fee but once.— The tax required by the second preceding section shall be paid but once, but such payment does not relieve any foreign corporation from the duty of complying with the requirements of existing laws and the payment of any other taxes required by law."

The position of appellant is largely based on the words of the last sentence of § 339, as follows:

"Provided that if after qualification a corporation shall employ an amount greater than that on which admission fees have been paid, it shall immediately report and pay on such additional amount."

On the contrary, the appellee insists that the qualification fee or admission tax is payable but once under the language of § 341 and that the qualification fee or admission tax is determined upon the basis of the amount of capital employed when it qualifies and the "actual amount of cap-ital to be employed by such corporation in this state during the calendar year," which is the language of § 340.

If the position of appellant is correct, then it must necessarily follow that at any time and as often as the amount of capital employed by the foreign corporation is increased in any amount over the amount employed at the time of qualification, an additional admission fee or entrance tax must be paid for each such increase. This does not seem to us to be a reasonable construction of the pertinent statutes. Why?

It seems reasonable that if the legislature had intended an additional admission fee, it would have fixed some definite due date for the payment of such additional amount before the corporation would be in default. "Liability for franchise tax is of a fixed date and there is no authority for the tax department to assess a tax based on liability other than of the law date of liability." International Paper Co. v. Curry, 243 Ala. 228, 9 So.2d 8, 12. In the foregoing decision of International Paper Co. v. Curry, we pointed out by illustrations that the revenue law of this state contemplates a fixed date as to the time when liability accrues. License taxes are due October 1. Motor vehicle taxes are due November 15. Permits are due on or before February 1. Sales and use taxes are due by the 20th of the month following collection. Ad valorem taxes are due January 1. In this connection we said: "The idea that tax liability is to be determined as of a particular date or time is universally recognized." International Paper Co. v. Curry, supra. This is not in accord with an interpretation of the statute under which liability can accrue at any time.

█ If the statute means what appellant contends, then a corporation is under a duty to report increases from day to day or be in default. Yet the mere matter of determining the capital employed, so as to avoid default, could be difficult and complicated because various factors might enter into such a computation. See State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 179 So. 541. In the case of

Ellis, Treas. et al. v. W. A. Handley Mfg. Co., 214 Ala. 539, 108 So. 343, this court held that the franchise tax was levied on the assets of the corporation in Alabama and employed in the business of the corporation. In the case of State v. Jackson Securities & Investment Co., 243 Ala. 83, 8 So.2d 573, this court held that the franchise tax is to be measured by the fair value of the property at the due date of the levy. Both admission tax and franchise tax are computed on the basis of capital employed within the state. Therefore, any increase in the fair value of assets, employed in the corporate business within the state, would result in increase of capital employed and require immediate payment of an additional admission tax so as to avoid default.

And what would be the result of any failure to report and pay the additional tax? The contracts of the corporation in the state could be rendered void and unenforceable at the option of the other party to the contract. § 342, Title 51, Code of 1940. It does not seem reasonable that the legislature intended to leave the corporation open to such drastic punishment long after its entry into the state had been approved by the authorities. It is well to compare the situation here with the franchise tax to which the foreign corporation is subjected as a part of the general statutory plan with reference to foreign corporations. The amount of this franchise tax is $2.00 per $1,000 of the actual amount of capital employed in the state. § 348, Title 51, Code of 1940.

Failure to comply with statutory requirements as to the annual franchise tax has no such extreme result. For collection of an unpaid franchise tax assessment is only by ordinary methods.—Section 357, Title 51, Code of 1940. It may also be noted here that the failure to pay ad valorem taxes and business licenses does not involve invalidity of contracts or abeyance of the right to do business.

■ The foregoing seems persuasive that the legislature intended for the fee for admission to be payable but once as Section 341 specifically declares. The language of section 341 construed with sections 339 and 340 appears to mean that at the time of qualification the corporation pays on its best estimate of the amount of capital which it will employ during the calendar year, as we shall more fully point out later, and if that estimate proves incorrect, then it shall report and pay on such additional amount as it may employ during the calendar year. But, assuming that an additional payment is made during the calendar year, the effect under the statute is one payment, since the additional amount should have been included in the original payment.

■ In discussing the historical development of the statutes under discussion, counsel for appellant lay stress on the following provision in the act, Acts 1907, p. 422, amending sections 1321 and 1322 of the Code of 1896, as follows:

" * * * provided that all foreign corporations which have heretofore, bona fide, qualified under prior existing laws shall receive a credit for the amount so paid by them on any amount falling due by the provisions of this act."

Examination of sections 1321 and 1322 of the Code of 1896 shows that the entrance fee was then based on the capital stock of the corporation. The amendment changed the basis of computing the entrance fee to "capital employed or to be employed in this State." Evidently the change was to keep the tax free from constitutional question. See Penn. Mut. Life Ins. Co. v. State, 223 Ala. 332, 135 So. 346. It seems to us that the foregoing provision was fairly intended by the legislature to give credit on the new basis of computation for taxes paid on the old basis of computation. Accordingly this does not show an historical attitude of requiring an additional tax when the basis of computation remains the same.

■ An examination of sections 339, 340 and 341, Title 51, Code of 1940, which were taken from the General Revenue Act of 1935, Acts 1935, pp. 256, 381, indicates that these sections follow closely the pattern of Sections 7214, 7215 and 7216 of the Code of 1923. These sections in the Code of 1923 were repealed by the aforesaid Act of 1935, Acts 1935, pp. 256, 383.

These sections in the Code of 1923 provided for the exaction of a franchise tax from foreign corporations. These sections as rewritten into the Code of 1940 provide for the exaction of a qualification fee or admission tax from foreign corporations. This is persuasive that the changes in the 1935 act from the language employed in sections 7214, 7215 and 7216 of the Code of 1923, should be considered together.

Pursuing the thought of considering sections 339, 340 and 341 together in the light of changes in the 1935 Act from the aforesaid sections in the Code of 1923, we think the legislature intended that the proviso at the end of section 339, a change, must be taken in connection with another change, the provisions of section 340, which requires a report showing "the actual amount of capital to be employed by such corporation in this state during the calendar year." This means that if a corporation underestimates the amount of capital to be employed during the initial year, it shall pay a qualification fee on such additional amount, the aggregate amount having been legally due at the time of qualification. This is emphasized by the authority given to the taxing authorities to examine books to see if the report is correct and make demand for such additional amount as may be found to be due. The sixty days allowed in section 340 applies only to a demand made on the corporation for the amount due during the initial year. If capital to be employed is restricted to capital to be employed during the calendar year, then liability in the indefinite future is surely cut off.

■ Appellant lays stress on the first bracket of the tax as levied by section 339, which provides that each corporation whose amount of capital employed or to be employed in the state at any time is $100.00 or less, shall pay an admission tax of twenty-five percent of the actual amount of the capital employed or to be employed in the state by it. The words "at any time," a change, are stressed in argument. This is the only bracket where this expression is used. Considering the statute as a whole, this provision seems to us to mean that the minimum required of every corporation to qualify is $25. It is significant that these words do not appear in the other brackets, because they involve fees exceeding the minimum requirement.

We think that the name of the tax, "qualification fee or admission tax," is worthy of note. To require a qualifying fee or admission tax years after a corporation has been admitted to do business in the state would be an anomaly. We think it reasonable that we should so hold only if the language of the statutes clearly requires such conclusion.

■ It is earnestly contended that if a foreign corporation is required to pay an admission tax only on capital employed or to be employed during the calendar year, it might pick its time to qualify and thus escape a larger liability. But even if there may be instances where a corporation might adopt such measures to escape a comparatively small fee, yet this should not deter us from placing a reasonable construction on the statutes involved. The small possible loss cannot be compared with the danger to all foreign corporations which might result if the contentions of appellant are upheld. The corporation cannot always with certainty determine the value of its assets on a given date and yet on such a date one of those having a contract with it might be able to prove that its assets employed in its business within the state were greater in value than the valuation on which the qualification fee was based and the contract accordingly void. Furthermore we said in effect in State v. Pullman-Standard Car Mfg. Co., supra, that if there be situations where a corporation can so lawfully manage its affairs as to save taxes, this is legitimate. See also International Paper Co. v. Curry, 243 Ala. 228, 9 So.2d 8.

■ We have undertaken to set out the reasoning by which we have reached the conclusion that the contentions of appellee in this case are sound and correct. We have done this because this case appears to present these questions with reference to the qualifying fee or admission tax for the first time, but this court in the case of International Paper Co. v. Curry, supra, considered a similar question with reference

to the annual franchise tax. We should, of course, not base our decisions on dicta, but where, as in the International Paper Co. case, all the Justices concurred in the opinion, except Knight, J., not sitting, it is persuasive that the decision in all its language is at least worthy of consideration. We quote excerpts from that decision to show that the interpretation which we have here placed on the statutes under consideration is in accordance with the interpretation placed on the statutes in that case:

"On April 7, 1941, International Paper Co. No. 1 qualified to do business in Alabama. At the time of its qualification, it contemplated merging into itself its subsidiary, Southern Kraft, but this was not effected until June 27, 1941. At the time of qualification it filed the statement required for *admission fees* under Sections 309 and 310 of the 1935 Revenue Act, Code 1940, Tit. 51, §§ 339, 340, and paid *admission fees* thereon. This statement showed that it expected to employ the capital then employed by Southern Kraft Corporation. The above named sections require the corporation to report the amount of capital employed or to be employed in the state *during the calendar year*. There is a further provision that if *during the year* the corporation employed additional capital than that shown in the return, it must pay *additional fees* based on such capital.

\* \* \* \* \* \*

"Section 309 of the Revenue Act of 1935 (Acts 1935, p. 381) provides for the qualification of foreign corporations and that the tax required shall be based on the actual amount of capital employed or to be employed in the State. Section 310,/ Acts 1935, p. 382, requires the report of capital employed or to be employed *during the calendar year*. Section 311, Acts 1935, p. 383, Code 1940, Tit. 51, § 341, provides that the *admission fee* 'shall be paid but once.'

\* \* \* \* \* \*

"The legislature has required a corporation at the time it enters the State to disclose what the capital employed at the time of entrance is and the capital which it proposes to employ *during the remainder of the calendar year*. There is the provi-

sion of the statute that should the corporation employ a greater amount of capital *during the year* than that shown at the time of entrance, it must report and pay an *additional entrance fee* thereon. That is, a corporation is liable for *entrance fee* whether it has any capital employed at the time of entrance or not, provided it employs capital in the state at any time *during the year*.

\* \* \* \* \* \*

"Applying the foregoing analogy to a newly qualified corporation, it may be assumed that at the time it qualified to do business it had employed within the State $100,000 which was all that it, in good faith, planned to employ *during that year*. It paid the *admission fees* on such $100,000 and made return for franchise tax and its franchise tax was assessed on the basis of $100,000. Such assessment became final.

"Distinguished counsel for appellant answer the question now propounded that subsequent corporate plans at a later period *in the calendar year*, acquiring and employing additional capital, would require no additional franchise tax to be paid for the reason that such corporation had met the requirements of the law and that based on the return made to the department of revenue had had an assessment which necessarily closed the matter for *such calendar year*. Counsel concede that this is not true of the *admission fee* because under the terms of the statute *such matter is not closed until the end of the calendar year* and the payment on 'all capital *employed during the year*,' is made.

\* \* \* \* \* \*

"Counsel admit that under the language and mandate of the Constitution and statute, as above quoted, there is no direct relation between the 'admission fee' and the franchise tax; that the basis on which the admission fee is paid may or may not be the measurement of the franchise tax which depends upon whether the capital on which the admission fee is based is actually employed at such time or within ten days thereafter or whether it is 'to be employed at some future undetermined date *within the calendar year.*'" International

Paper Co. v. Curry, 243 Ala. 228, 9 So.2d 8. [Italics supplied.]

Rehearing in the International Paper Co. case, supra, was denied on June 30, 1942. We may note in passing that the legislature which sat in 1943 and again in 1945 took no action of any kind to show its disapproval of the foregoing interpretation. We think this is some indication that the legislature agrees that the interpretation of the statutes in the case of International Paper Co. v. Curry, supra, is in accordance with the intent of the legislature.

Accordingly we consider that the action of the lower court was free from error and is due to be affirmed.

Affirmed.

GARDNER, C. J., and FOSTER and LAWSON, JJ., concur.