108 So.2d 831

**R. Neil METCALF, as Commissioner of Revenue,**

**v.**

**SPERRY & HUTCHINSON COMPANY.**

**3 Div. 803.**

Supreme Court of Alabama.

Jan. 15, 1959.

Rehearing Denied Feb. 19, 1959.

**624**

John Patterson, Atty. Gen., Willard W. Livingston and Wm. H. Burton, Asst. Attys. Gen., for appellant.

Hill, Hill, Stovall & Carter, Montgomery, and Casey, Lane & Mittendorf, New York City, for appellee.

LAWSON, Justice.

This is a suit by The Sperry & Hutchinson Company, a corporation, sometimes referred to hereafter as S & H, against Larue Horn, as Commissioner of Revenue of the State of Alabama, for a declaratory judgment as to the amount of license tax due by complainant in connection with the operation of its business in the State of Alabama.

Submission in the trial court was on the bill of complaint and answer, stipulation of facts entered into by counsel for the parties, and on depositions of several persons examined at the instance of the respondent.

The appeal to this court is by the respondent from the final decree. S & H, the complainant below, has made cross-assignments of error. Rule 3, Revised Rules of the Supreme Court of Alabama, Code 1940, Tit. 7, Appendix. After submission here, Larue Horn resigned his office and his successors have been appointed.

█ This is not a suit against the State. The bill shows a justiciable controversy and the trial court properly proceeded to the rendition of a final decree. Curry v. Woodstock Slag Corp., 242 Ala. 379, 6 So. 2d 479; International Paper Co. v. Curry, 243 Ala. 228, 9 So.2d 8; Horn v. Dunn Brothers, Inc., 262 Ala. 404, 79 So.2d 11.

S & H is a foreign corporation which has been qualified to engage in the "trading stamp business" in this state since 1909. The manner in which it operated in Alabama during the period of time here involved was agreed upon in the stipulation of facts which, in pertinent parts, reads:

"3. * * *

"S & H enters into license agreements with retail merchants using the form of agreement attached to the complaint as Exhibit 1. Pursuant to the license agreement S & H furnishes trading stamps (attached to the complaint as Exhibit 2) to retail merchants. Said trading stamps are described in the license agreement as 'S & H Co-operative Cash Discount Stamps.' The merchant, in turn, agrees 'To offer said stamps to all customers * * * (and) to issue to the customers one of said stamps for each ten cents, represented by such payments, as a discount for the payment of cash when made either C.O.D. or, at the option of the Licensee, on or before the 15th proximo.'

"A customer paying cash to the stamp-issuing merchant, as set forth above, receives the stamps and pastes them into a stamp collectors book provided for that purpose (attached to the complaint as Exhibit 3). When at least one book has been filled (1200 stamps are required to fill one book.), the customer may surrender the book, or additional books and fractions of books, to S & H for redemption in accordance with the catalogue (the current one being attached hereto as Exhibit 'A' and made a part hereof). Each filled collectors book may be redeemed for merchandise having an average retail value of $3.00. Redemption may be made at any S & H redemption center or by mail from an S & H warehouse located outside of Alabama. All of the S & H redemption merchandise is the nationally advertised high quality product of reputable manufacturers.

"4. S & H maintains five redemption centers in the State of Alabama. They are located at Gadsden, Dothan, Montgomery, Anniston and Mobile. S & H does not occupy fixed business space or offices or real estate of any kind in any other locality in Alabama where it engages in the business of issuing trading stamps. All of the employees of S & H in the State of Alabama engaged in the business of issuing trading stamps are based at, and work in or from the above five redemption centers, and the redemption merchandise and other supplies or materials of S & H including forms of agreements (Exhibit 1), stamps (Exhibit 2), collectors books (Exhibit 3) and catalogues (Exhibit A) are kept at such redemption centers; and the executed agreements, receipts and reports are returned to said redemption centers.

"5. Solicitation and serving of the merchants by S & H is accomplished in the following way:

"Representatives employed by S & H have the responsibility for soliciting new accounts and servicing existing accounts. Each representative is responsible for a specified geographical area. If a merchant decides to take on S & H trading stamps, he is required to sign a license agreement (Exhibit 1), and he will thereupon generally be supplied by the S & H representatives with trading stamps at regular intervals. The representative whose job it is to call on merchants authorized to issue S & H stamps usually travel by automobile in which they ordinarily carry several pads of stamps from the base redemption center. They will ask the merchant whether he has a present need for additional stamps, and, if there is such a need, they will supply him with the required number of stamps in exchange for cash payment by the merchant."

Paragraph 6 of the stipulation deals with the cost of stamps to the merchant and

paragraph 7 recites the fact that as of May 6, 1957, there were 583 merchants in the State of Alabama who issued S & H trading stamps to their customers and that those merchants were located in forty-four counties in Alabama.

The depositions which were admitted in evidence do not alter the stipulated facts in any material respect.

Section 606, Article 1, Chapter 20, Title 51, Code 1940, as amended, reads:

"Every person who engages in or carries on the business of issuing or selling to merchants, trading stamps, or any device or substitute therefor, or any stamps or certificates of like character which are to be given by merchants to purchasers of goods, wares or merchandise and which said stamps, certificates or devices, or substitute therefor, the person issuing or selling the same agrees to accept in payment for goods, wares, and merchandise kept on hand by himself or another for redemption or for distribution by the person issuing or selling such stamps or certificates, shall pay to the state of Alabama a privilege or license tax of one thousand dollars per annum. Provided further that the provisions of this section shall not apply to any coupon, ticket, certificate, card or other similar device issued or distributed by a manufacturer or packer which is redeemable for any goods, wares or merchandise by the manufacturer or packer, or its agents or independent contractor acting for redemption."

Section 831, Title 51, Code 1940, as amended, provides in pertinent parts as follows:

"* * * (a) Whenever a license is levied in this title, there shall be collected both a state and county license for each place of business, except as specifically otherwise provided * * * (c) There is hereby levied for the use and benefit of and to be paid to the county in which the license is issued, in addition to all license taxes levied under the provisions of article 1 of chapter 20, for state purposes and which are payable to the judge of probate or commissioner of licenses, a sum equal to fifty percent of the amount levied for state purposes, except as otherwise specifically provided. * * *"

S & H took the position in the court below that the only privilege license tax which it owes for all of its operations in Alabama is the sum of $1,000. This position was based on the assertion that the above-quoted provisions of § 831, as amended, have no application to the license provided for in § 606, as amended.

The Commissioner of Revenue contended that the quoted provisions of § 831, as amended, do apply to § 606, as amended, so as to require S & H to pay a license tax in the amount of $1,500 for each county in which the agents of S & H deliver its trading stamps to retail merchants.

The trial court did not agree in all respects with either party but decreed "* * that the complainant [S & H] is liable for and shall procure, if it has not already done so, a State license in the amount of $1,000 and a County license in the amount of $500, for each County in the State of Alabama in which the complainant maintains a fixed and established place of business, such as the redemption centers which are maintained by the complainant in Calhoun, Etowah, Houston, Montgomery and Mobile Counties * * *."

We will consider first the cross-assignment of error which S & H has argued in its brief. It reads: "The lower court erred in this cause in not holding and declaring in its final decree that the only license tax due and owing by appellee in connection with the operation of its trading stamp business in the State of Alabama is the sum of $1,000 payable only one time, the payment of which license tax of $1,000 authorizes the appellee to carry on its business of issuing and redeeming trading stamps throughout the State of Alabama at large, and in as many Counties as appellee

shall determine; and that Section 831 of Title 51, as amended, is not applicable to this appellee under the law or to the license tax imposed under Section 606, as amended."

S & H argues that because § 606, as amended, specifically provides that the license tax therein levied is to be paid "to the state of Alabama," the provisions of subsections (a) and (c) of § 831, as amended, cannot operate to exact any additional license tax because those subsections both contain language to the effect that they are applicable only "except as specifically otherwise provided."

■ We cannot agree with this contention. The licenses provided for in Article 1, Chapter 20, Title 51, as amended, are all levied for State purposes except in those instances where the section levying the license contains language showing the levy is for a different purpose. The words "to the state of Alabama" used in § 606, as amended, merely spell out that which is implied in most of the other sections in that article.

S & H also argues that the legislative history of § 606, as amended, shows that a single license tax of $1,000 is due by it annually for all of its operations in Alabama.

It seems to be conceded that for a number of years prior to September 9, 1955, the effective date of Act 399 of the 1955 Legislature (Acts of Alabama, 1955, Volume 2, p. 938), which amended § 606, Title 51, Code 1940, the State Department of Revenue sought to collect from trading stamp companies only one state license tax annually, which covered all of their operations in this state. There was no effort made during those years to exact a county license from such companies.

The tax authorities so acted, no doubt, because of the unusual features included in § 606, Title 51, Code 1940. The license tax imposed by that section was not in a fixed amount. It was three per cent of the gross receipts of the company, with a minimum

of $1,000 annually. There was no way to determine with exactitude the amount which might be due if subsections (a) and (c) of § 831, Title 51, were applied. The license tax was required to be paid directly to the State Department of Revenue rather than to the judge of probate, as is generally the case in regard to license taxes. To secure payment of this license tax the companies were required to execute a bond, payable to the State of Alabama, "to insure the payment to the department of revenue of the state of a privilege or license tax of three per cent of the gross receipts of such business in this state for one year." The companies were also required to file with the Department of Revenue detailed reports of their operations and it was specifically provided that any violations of the terms of that section constituted a misdemeanor. However, these features were all eliminated by the 1955 act, supra, which act in our opinion operates to make the general provisions, such as § 831, as amended, applicable to trading stamp companies. We can see nothing in the history of the applicable statutory provisions which requires a conclusion contrary to that reached by the trial court on the question presently under consideration.

We hold, therefore, that there is no merit in the cross-assignment of error which S & H has argued in its brief and which we quoted above.

■ The remaining question for decision is raised by appellant's assignments of error to the effect that the trial court erred in not declaring that S & H is liable for and due to pay a state and county license of $1,500 in each of the forty-four counties in Alabama in which merchants issue trading stamps to their customers after acquiring those stamps from S & H in the manner described in the stipulation of facts, irrespective of the fact that S & H may have no place of business in those counties.

Subsection (a) of § 831, as amended, does not levy a license for the doing of business in a county. The license therein levied is made collectible only "for each place of business." We see no justification for our

**628**

construing the words "each place of business" as being synonymous with the words "in each county in which the taxpayer does business." If the Legislature had intended for the provisions of subsection (a) to be applicable in each county where business was transacted in any manner it could have easily so provided. To adopt the appellant's argument that subsection (a) should be construed as levying a license for the doing of business in a county would be tantamount to writing into that subsection something the Legislature did not incorporate therein and would amount to judicial legislation and would be contrary to the oft-stated rule that taxing statutes are strictly construed against the taxing power. State v. Southern Kraft Corp., 243 Ala. 223, 8 So.2d 886.

We hold that there is no merit in the appellant's argued assignments of error.

In view of the foregoing, the decree of the trial court is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.