# American Ice and Industries Co. *et als. v.* Crane.

## *Bill in Equity to Enjoin a Corporation from Issuing Bonds.*

1. *Corporations; when bond issue invalid.*—A corporation in this State cannot issue bonds except for money, labor done, or property actually received (Constitution, Sec. 234; Code, § 1270); and, therefore, where the officers of a corporation have authorized the issuance of bonds which are to be distributed among the stockholders, such issuance is unauthorized and may be restrained at the suit of a stockholder.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. JOHN C. CARMICHAEL.

The bill in this case was filed by the appellee, A. F. Crane, against the American Ice and Industries Company and certain named officers and agents of said Company for the purpose of enjoining said corporation and its officers from executing bonds of the corporation in excess of the sum of $50,000. The facts averred in the bill and answer are sufficiently set forth in the opinion.

The defendants demurred to the bill on the following grounds: (1.) That so far as said bill of complaint shows, it appears that the complainant is the only stockholder who complains of said proposed action of the corporation, and that the said injury to the complainant

will be slight and inconsiderable, and will affect all stockholders alike. (2.) That said bill of complaint fails to show any transaction on the part of the defendant that is wrongful and illegal. (3.) That so far as said bill of complaint shows, the complainant would have full right of action against any or all of said directors who might be guilty of misconduct or malfeasance in office. (4.) That if the Court should grant the permanent injunction prayed for in said bill of complaint, the said corporation would be hopelessly crippled from using at least $50,000 of possible assets as a basis for acquiring such other amounts as will be used for perfectly legitimate purposes. (5.) That said bill of complaint fails to show that said contemplated action on the part of said directors would inflict a great and irreparable injury on the complainant's interest in said corporation. (6.) That said bill of complaint is without equity.

The defendant also moved to dismiss the bill for want of equity, and also moved to dissolve the temporary injunction, which was issued upon the filing of the bill, upon the ground that said bill was without equity.

Upon the submission of the cause upon the motions and demurrer, the chancellor rendered a decree overruling each of said motions and overruling the demurrer. From this decree, the defendants appealed, and assigned the rendition thereof as error.

DILL & ALLEN, for appellants.

LEDBETTER & JOHNSTON, *contra.*—Cited Constitution of 1901, Art. 13, Sec. 234; *Fitzpatrick v. Dispatch Publishing Co.,* 83 Ala. 604; *Parsons v. Joseph,* 92 Ala. 403; *Mabel Mining Co. v. Pearson Coal & Iron Co.,* 121 Ala. 567, and cases cited; *Niehaus & Co. v. Cooke,* 134 Ala. 223; *Memphis & Charleston R. R. Co. v. Wood,* 88 Ala. 647.

HARALSON, J.—The defendant company, as is alleged in the bill, was incorporated with a capital stock of $100,000.00, divided into 1000 shares of $100.00 each, of which the complainant was the owner of fifty shares.

The bill charges in substance, that three of the directors of said corporation,—Drake, Eben and Wright,—proposed to complainant, on the 9th day of April, 1904, that he should consent to an issue of a $100,000.00 of the bonds of said corporation,—to be secured by a mortgage on its property,—in excess of the amount of its outstanding obligations of $50,000.00, such excess to be delivered to and used by the stockholders for their own benefit, which proposition was not accepted by complainant; that they caused notice to be given of a meeting of the stockholders to be held on the 21st day of May, 1904, for the purpose of electing a board of directors and considering the proposition to issue $100,000.00 of six per cent 15 year gold coupon bonds, to be secured by a deed of trust on all the property of said company, which meeting complainant states, on information and belief, was not called as provided by the by-laws of said corporation.

It is further alleged, that said meeting was held, a new board of directors was elected, leaving complainant out of the board, which, it is alleged was done on account of his opposition to the issue of said bonds, and resolutions were adopted in said meeting, which complainant opposed as being illegal, reciting that the company was indebted to various persons in the sum of $50,000.00; that it was desired to provide for this indebtedness and for further improvements of the company's property, "and for such other purposes as the board of directors may deem expedient," and resolving that the company be authorized to issue $100,000.00 of six per cent 15 year gold bonds, interest payable semi-annually, and that it should take steps to have said bonds prepared and executed at once; to secure the payment of which, the president and secretary were directed to execute to a trust company a mortgage conveying all the real and personal property of the said company.

It is averred, that the indebtedness of the company did not exceed $50,000.00, a great part of which was not due, and none of it pressing; that the property of the company was worth $100,000.00; that it was wholly unnecessary to borrow money to carry on the business of the company, which was yielding a handsome profit; that

no further improvements were necessary, and none contemplated to be then made, and complainant was informed that the remainder of said bonds, after reserving the number to secure the indebtedness, was to be given to the stockholders for their own use and benefit. It was further alleged, that said directors were about to issue $100,000.00 of bonds and to give a mortgage on the company's property to secure the same.

The answer admits that the business of the corporation defrayed its expenses and yielded a profit, and by way of a general denial states, that further improvements on the plant were contemplated, but it did not state what such improvements were. It did not deny but admitted, that it was stated by directors, that after all existing indebtedness had been secured, the remainder of said bonds would be given to the stockholders for their individual benefit, yet there was no intention on the part of the directors to do so without the consent of each stockholder. It is also denied that there was, at the time of the answer, a present purpose to issue any amount of bonds, on account of the unfavorable condition of the money market. They also deny that complainant was turned out of the directory because of his opposition to the issuance of said bonds.

An injunction was granted enjoining defendants from issuing, as prayed in the bill, more than 50 bonds of the denomination of $1,000.00 each, and from executing a mortgage on the property of the company to secure a greater indebtedness than said sum, etc.

The defendant demurred to the bill and moved to dismiss it for want of equity. Said motion and the demurrer were overruled.

The Constitution provides, § 234, that "No corporation shall issue stock or bonds except for money, labor done, or property actually received; and all fictitious increase of stock or indebtedness shall be void." Section 1270 of the Code contains the same provision as to the issuance of stock and bonds.

In this case it is not denied that it was the purpose of the directors, as admitted by some of them, to issue the bonds to secure the indebtedness, and to distribute those remaining,—about $50,000.00 worth,—to the

stockholders, conditioned as is stated, in securing the consent of the stockholders. They deny, however, that such was their purpose at the time of making their answer. The fact is undisputed that the indebtedness of the company was about $50,000.00, and none of it was pressing, and that the company was making a profit over all current expenses. It is also true, that complainant was turned out of the directory, shortly after he opposed the scheme of issuing bonds to be divided among the stockholders, and it is not stated, if that were important, that any improvements were in immediate contemplation of being made. The allegation of such as are referred to might be true, and yet such improvements might never be made. For this $50,000.00 of bonds, proposed to be issued, above the indebtedness of the company, no money had been received or was due. If issued, the act of so doing, would have been directly against the Constitution and statute, providing that no corporation shall issue bonds except for money received, and making them void if so issued. The issuance of stock and bonds except for money are alike prohibited in the same clause of the Constitution and statute. As to issuing stock contrary to these provisions, this court uses language as applicable as if spoken concerning the unlawful issue of bonds: "It behooves constituted authority to keep well abreast with the many inventions which modern cupidity has wrought out, and which, perhaps, more than any other agency, have called into exercise pernicious principles, which threaten the overthrow of organized government. In this highly conservative, yet restraining spirit, the principle, constitutional and statutory, on which this case mainly hinges, had its origin and finds its justification. Let us not, by timid interpretation, impair the strength of this bulwark, erected by our constitution-makers against the frauds which have become the reproach of the age we live in."—*Fitzpatrick v. Dispatch Publishing Co.*, 83 Ala. 607.

Again it is said, "The constitutional provision in question operates to invalidate evidences of indebtedness when there is in fact no debt; to require every issue of stocks or bonds of private corporations to represent substantial values received by the corporations; to impose

upon those charged with the disposition of corporate securities the duty to procure therefor a fair and reasonable equivalent in money, labor or property, actually contributed to the corporation. * * * * The negotiation of bonds must be a real transaction carried through to promote legitimate corporate purposes, and not a mere trick or device to evade the law and impose greater obligations upon the corporation than there is any occasion for it to assume in order to obtain the consideration received therefor."—*Nelson v. Hubbard,* 96 Ala. 250-1.

It would seem under these conditions, considering the relative degree of injury or benefit to the complainant and defendant, which may follow from the continuance of the injunction on the one hand, or its dissolution on the other, the chancellor, even if the dissolution or continuance of the injunction were a matter of doubtful propriety, might well have concluded that less damage or injustice would result from its continuance than from its dissolution.

The decree of the court must be affirmed.—*Mabel Mining Co. v. Pearson Coal & Iron Co.,* 121 Ala. 567.

Affirmed.

McCLELLAN, C. J., DOWDELL and DENSON, J. J., concurring.