183 So. 447

DARLEY v. ALABAMA PUBLIC UTILITIES CO. et al.

3 Div. 260.

Supreme Court of Alabama.

June 30, 1938.

Rehearing Denied Oct. 6, 1938.

Hill, Hill, Whiting & Rives and McCord & Knabe, all of Montgomery, for appellant.

R. L. Farnell and Jack Crenshaw, both of Montgomery, and Gibson & Gibson, of Birmingham, amici curiæ, in behalf of appellant.

Geo. B. Haile, of Cookeville, Tenn., for appellees.

BOULDIN, Justice.

A court of equity, in the exercise of its inherent original jurisdiction in the administration of receiverships may sell the properties in the possession of its receiver at private sale when, in the exercise of judicial discretion, such sale is deemed to the best interest of those concerned.

Chancery Rule 113 has no reference to a sale of the properties of a telephone company, located in several counties, consisting of real and personal properties, easements and franchises of a public utility corporation and being operated as such. The sale of such properties as a unit for the continued public uses to which they are dedicated is essential to the conservation of their elements of value.

A sale at auction on publication in a local newspaper, or by posting notices, as provided in sales of the personal property of an estate being administered in the Probate Court, would be inapt and disastrous in many cases. Anderson v. Steiner, 217 Ala. 85, 115 So. 4; McCreary et al. v. Billing et al., 176 Ala. 314, 58 So. 311, Ann.Cas.1915A, 561; High on Receivers, § 198.

The court has full power to make such sale free from liens and incumbrances without awaiting the result of litigation touching the priority or validity of alleged incumbrances on the property, when such sale is necessary to protect the interest of all parties. Priorities, in such case, are to be worked out in the distribution of the proceeds. High on Receivers, § 192.

The grave questions in this appeal go to the propriety of the sale as made, the results obtained for those whose interests the courts should protect, and not to the jurisdiction and powers of the court in the premises.

Alabama Public Utilities Company, a domestic corporation, owned and operated as a public utility a telephone system, with local exchanges, covering six counties in the northwest section of Alabama.

The receivership has been pending since 1933. The bill was filed by a creditor and stockholder, at the same time the vice-president of the corporation. It disclosed that the company had become indebted to sundry creditors, owed past due taxes of $2,-500 to $3,000, was unable to meet these obligations, was threatened with suits and tax proceedings resulting in a dismemberment of its properties, the crippling of the public service, and loss to creditors, stockholders, etc.

The bill prayed for a receiver, that provision be made to meet the pressing demands, that the court operate the system through its receiver with a view to a reorganization or sale of the property and franchises as a going public utility as the interests of all should appear.

The answer admitted these averments. Complainant was appointed receiver, and has operated such utility as such under order of the court to the date of sale, April 27th, 1937. The jurisdiction of the court in these regards is unquestioned.

The sale was made directly by the court by acceptance of a bid submitted in open court, on the morning of the same day, after hearing, however, in which counsel for the parties, for the receiver, and for intervening bondholders, participated. The receiver recommended an immediate hearing on the bid. The President of the Public Service Commission, and the Engineer of that Commission were among the chief witnesses, and the Peoples' Attorney cooperated. Much stress was laid on the protection of the interests of the public, the people served by the telephone system; inefficient service, deterioration of the properties, the inability

466

to render proper service without large outlays for reconstruction, equipment, etc.

Manifestly, one of the moving considerations with the court was the procurement of capital for rehabilitation, and the speedy restoration of adequate service. The suggestion of receiver's certificates for the purpose, a plan opposed from the beginning by those concerned, lest the property be sacrificed by the consuming processes of a receivership, we think the court well justified in disregarding at this stage. The property, under the weight of the evidence, would not afford security for such outlays as are needed to fully meet the demands of an adequate public service.

The plan adopted to turn over the property to a responsible bidder to begin immediate improvements, upon condition he should have a lien for such outlays in the event the sale was disapproved on appeal to this court, was within the discretion of the court.

■ It is not to be questioned that the public uses to which this property was dedicated was a proper matter for consideration of the court. All the parties had full notice of this public use to be conserved.

Assuming the court had ample power to prevent any revocation of the state franchise, or even local franchises, pending the operation of the system by the court, this implies the court should see to it that reasonable service was rendered.

But the public service was not the sole interest to be protected.

■ The interests of creditors in the order of their priority, and in certain events, the interests of the stockholders, were of concern. To protect all was the purpose of the receivership.

The appeal was taken by the receiver. This was one of the conditions of the bid. Parties in interest, though not taking a separate appeal, have filed briefs which we consider as if filed by the appellant.

■■ In view of the long pending receivership, wherein parties have failed to effect a reorganization as contemplated at the beginning, and the pendency of intervention proceedings by parties claiming a mortgage incumbrance on the property to secure bonds issued by a predecessor in ownership, a litigation instituted as late as 1937, and of indefinite time to elapse before these issues are settled we find no error in making the sale free of all liens, etc.

This record does not disclose a case wherein incumbrances exist superior to all other claims, admittedly greater in amount than the value of the property; a case wherein the property should be surrendered to the incumbrancers. The rule in Bankruptcy requiring such surrender unless some equity is available for other creditors has no application here.

■ But it is urged that this property was sold with undue haste on a bid sprung on the day it was accepted, without proper investigation; that the property was sacrificed to the injury of those interested; that there was no such emergency as called for such procedure, etc. This contention presents the issues of grave concern to this court. Private sales should be made only on careful investigation and reasonable assurance that considering the entire situation, it is to the best interest of those whose rights are to be conserved.

■ It appears that bids were invited on this property during the preceding summer, after advertisement in trade journals and a state paper. Two bids were received. One for $40,000 with sundry conditions, not necessary to here enumerate. This bid, after some months, was recommended by the receiver. But, it appears the bidders did not follow up or meet the conditions on their part, and the bid was, by order of court, rejected.

The other bid was $30,000 by Messrs. Cox and Vaughan, the final purchasers at $20,-000. This bid, of $30,000 was conditional, and before acceptance, was withdrawn by consent of the court. It is insisted these bids evidence a greater value than was paid for the property. Some insistence is made that $25,000 would have been paid by these purchasers very shortly before putting in the last bid.

The court, however, had no assurance of any higher bid nor indeed of any bid, if the proposition made in court was rejected.

After full consideration from all viewpoints, we are not prepared to hold the trial court committed error in his decree of April 5th, accepting the bid of same date, or the decree of April 27th, 1938, fully defining the terms and conditions of such sale. We can have no assurance that, by reversal, any better results will or can be had for those whose interests are to be conserved.

We take it, the court retaining jurisdiction, will make any needful orders to as-

sure payments of the deferred instalments as agreed.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.