194 So. 177
#### NELSON et al. v. DARLEY et al.
#### 3 Div. 290.

Supreme Court of Alabama.
Dec. 21, 1939.

Rehearing Denied Feb. 22, 1940.

R. L. Farnell and Jack Crenshaw, both of Montgomery, for appellants.

Walter J. Knabe and Hill, Hill, Whiting & Rives, all of Montgomery, for appellees.

BROWN, Justice.

This case was here on a former appeal of the receiver from a decree ordering the sale of the property. Darley v. Alabama Public Utilities Co. et al., 236 Ala. 463, 183 So. 447.

This appeal is from a final decree dismissing the original bills in the nature of cross-bills of W. Arnold Duncan and Victor W. Nelson, separately filed, as holders of bonds issued by the South Central Telephone Company, a corporation organized under the laws of the State of Delaware, alleged to be secured by deed of trust on property located in Alabama, consisting of real estate, telephone lines, equipment and franchises for the operation of such public utility.

The said Duncan in his bill filed September 10, 1937, alleges, that he "is the owner and holder of certain of said bonds secured by said mortgage to the sum of, to-wit, $185,000.00. * * * that the principal amount of said bonds will become due on February 1, 1938."

By amendment, said cross-complainant alleged that he acquired the bonds on December 12, 1929, from the "Mid-Continent Utilities Corporation Bondholders Protective Committee"; that he acquired "said bonds from the owner or holder thereof for a valid cash consideration prior to the maturity of said bonds." There is in his bill an absence of averment that he acquired said bonds without notice of defects in the bonds or title thereto.

Nelson, in his bill filed February 21, 1938, alleged that he "is the holder in due course of certain of said bonds secured by said mortgage to the sum of, to-wit, $50,000.00," with like averment as to the maturity as incorporated in the bill of Duncan. There is also an absence of averment that the bonds were acquired by said cross-complainant without notice, or that he paid value therefor.

The complainant, Darley, amended the original bill, and also the answers to the original bills in the nature of cross-bills by incorporating in the original bill as paragraph 4(a), and in said answers the following averments: "That the uncancelled mortgage or deed of trust against the properties of the Alabama Public Utilities Company was dated February 1st, 1928, and purports to have been executed by South Central Telephone Company to Union Trust Company and Rufus F. Chapin, Trustees, and purports to have conveyed the real properties located in the State of Alabama, and which are the properties of the Alabama Public Utilities Company; that said bonds were issued without the receipt of any money or property by said corporation, South Central Telephone Company, and without the performance of any labor for said corporation, South Central Telephone Company, that the indebtedness evidenced by said bonds was fictitious, and that said fictitious bond issue was void and of no effect in the hands of any person. That the course of dealings with said bonds was that said bonds were without any consideration, either of money, property or labor, issued and delivered to J. S. Martin & Company, an Illinois Corporation, which in turn delivered said bonds to Mid-Continent Utilities Corporation, a Delaware Corporation, and that said Mid-Continent Utilities Corporation pledged said bonds as security for an issue of ten year-six percent Gold Bonds, Serial A of said Mid-Continent Utilities Corporation. That no consideration whatever was paid to South Central Telephone Company for the issuance of said bonds, and that said bond issue is fictitious and void as a lien or charge against any real property located in the State of Alabama, or against any of the properties involved in this suit."

The order of submission recited: "This cause coming on to be heard, is submitted for final decree on the issue presented as to the validity vel non of the mortgage or deed of trust against the properties of the Alabama Public Utilities Company dated February 1, 1928, and the bonds secured thereby, and upon pleadings and proof as noted by the Register."

The testimony of two or more witnesses given ore tenus in open court and documentary evidence consisting of exhibits to depositions and the files in the case were noted by the Register.

The weight of historic data confirms the fact that the concept of separate entity of a business organization from the natural persons operating and controlling it, originated in the civil law. 14 C.J. 50, § 2. However this may be, and though it be conceded that this concept originated in the development and growth of English Jurisprudence, as evidenced by the organization of the "Hudson Bay Company," organized by the governors and certain adventurers as a business trust, under charter granted by the Crown of England, for the purposes of exploiting the North American Conti-

nent; nevertheless the modern business corporation as recognized in the United States is solely a creature of legislative authority, chartered by special legislative act or organized under general statute which constitutes its charter and the source of its power. 14 C.J. 92, § 53; Ex parte Selma & Gulf Railroad Company, 45 Ala. 696, 725; 6 Am.Rep. 722; Paschall v. Whitsett, 11 Ala. 472.

In the absence, therefore, of pleadings and proof of the lex loci contractus the lex fori must be applied in determining the validity of the deed of trust executed by the South Central Telephone Company, and the bonds which it purported to secure. Peet & Co. v. Hatcher, 112 Ala. 514, 21 So. 711, 57 Am.St.Rep. 45; Kennebrew v. Southern Automatic Electric Shock Machine Company, 106 Ala. 377, 17 So. 545, 549; 17 C.J. S., Contracts, p. 335, § 12.

Article XII, § 234, of the Constitution of 1901, declares that: "No corporation shall issue stocks or bonds except for money, labor done, or property actually received; and all fictitious increase of stock or indebtedness shall be void. The stock and bonded indebtedness of corporations shall not be increased except in pursuance of general laws, nor without the consent of the persons holding the larger amount in value of stock, first obtained at a meeting to be held after thirty days' notice, given in pursuance of law." Skinner's Annot.Constitution 1901, p. 842.

This Section of the Constitution expresses in the highest form the public policy of this State. Randolph v. East Birmingham Land Co. et al., 104 Ala. 355, 16 So. 126, 53 Am.St.Rep. 64; White v. White, 230 Ala. 641, 162 So. 368; Williams v. Evans, 87 Ala. 725, 6 So. 702, 6 L.R.A. 218; American Ice and Industries Co. v. Crane, 142 Ala. 620, 39 So. 233; Nelson v. Hubbard, 96 Ala. 238, 11 So. 428, 17 L.R.A. 375.

In Williams v. Evans, supra [87 Ala. 725, 6 So. 703, 6 L.R.A. 218] it was observed, that: "One of the purposes of this clause of the constitution was to protect the public, as well as stockholders, against spurious and worthless stock by the process of watering,—in other words, from fraudulently issuing and putting on the market fictitious corporate stock, which is based on nothing valuable, as a consideration for its issue."

And said § 234 of the Constitution places "stocks or bonds" in the same category. American Ice and Industries Co. et als. v. Crane, supra.

And in Nelson v. Hubbard, supra, it was held that [96 Ala. 238, 11 So. 432, 17 L.R.A. 375]: "The constitutional provision in question operates to invalidate evidences of indebtedness when there is in fact no debt; to require every issue of stocks or bonds of private corporations to represent substantial values received by the corporations; to impose upon those charged with the disposition of corporate securities the duty to procure therefor a fair and reasonable equivalent in money, labor, or property actually contributed to the corporation."

The evidence is practically without dispute, and goes to show, briefly, that the promoters of the South Central Telephone Company, including the witnesses Miller and J. S. Martin of J. S. Martin & Company, an Illinois corporation, operating as promoting bankers, caused the said South Central Telephone Company to be incorporated in the State of Delaware, the agent of said promoters using its own personnel, for the purpose of incorporation. Said South Central Telephone Company at the completion of the organization was a mere simulacrum, wholly without assets, organized for promotion purposes, it being contemplated that Martin & Company would acquire some of the telephone properties in Alabama and Mississippi on which that corporation held options.

At the time of the incorporation of the South Central Telephone Company, the same parties were promoting and had incorporated the Mid-Continent Utilities Corporation as a holding company.

J. S. Martin & Company borrowed money from the Union Trust Company to exercise the options which it held on the property in Alabama and Mississippi, paid for the property $160,000, acquired the title thereto, and conveyed the same to the South Central Telephone Company for and in consideration of all its capital stock, except the share of two dummy stockholders.

This transaction occurred on the 28th of February, 1928. Previous to this time, the South Central Telephone Company had signed the deed of trust to the Union Trust Company and Chapin as trustee to secure a simulated issue of $200,000 of its bonds, and on February 23, 1928, the deed of trust and the bonds were turned over to J. S. Martin & Company for "financing purposes," and Martin & Company pledged said deed of trust and the bonds with the Mid-Continent Utilities Corporation as collateral security for the issuance of $600,

'000 of the holding company's bonds, and some of said holding company's bonds were turned over to Martin & Company for sale, and Martin & Company sold sufficient of these bonds to pay the debt contracted by Martin & Company in procuring the loan to acquire the Alabama and Mississippi properties.

Nothing was paid for the bonds of the South Central Telephone Company, nor was there any consideration passing out to that company for the execution of the deed of trust.

The simulated execution of said deed of trust and said issuance of the bonds, in these circumstances, was contrary to the public policy of this state as established by § 234 of the Constitution, and our courts of equity will not lend their aid to the enforcement of such simulated contracts. Woods & Co. v. Armstrong, 54 Ala. 150, 25 Am. Rep. 671; Nelson v. Hubbard, supra; Whitehead et al. v. Coker, 16 Ala.App. 165, 76 So. 484; Cole v. Brown-Hurley Hardware Co., 139 Iowa 487, 117 N.W. 746, 18 L.R.A.,N.S., 1161, 16 Ann.Cas. 846; 6 R.C. L. pp. 710–712, §§ 119–120.

The question of innocent holders in due course, without notice, is not presented on this record for the reason that the intervening complainants do not allege that they acquired their rights for value and without notice. Sherrod v. Hollywood Holding Corporation, 233 Ala. 557, 173 So. 33; Moore et als. v. Clay, 7 Ala. 742; Johnson et al. v. Toulmin et al., 18 Ala. 50, 52 Am. Dec. 212; Wells v. Morrow, 38 Ala. 125.

The failure to so plead, however, was not disadvantageous to the intervening complainants, as the Constitution expressly declares that bonds issued without consideration are void. Woods & Co. v. Armstrong, supra; Whitehead v. Coker, supra.

The decree of the circuit court dismissing said original bills in the nature of cross-bills is free from error.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.

### On Rehearing.

BROWN, Justice.

The substance of what we hold in the foregoing opinion is that business corporations were unknown to the common law, and are of statutory origin. Therefore there is no reason to indulge the presumption that the common law prevails in the States of Illinois and Delaware; the law of those states not being presented by appropriate pleadings and proof. the courts must apply our law, the law of the forum in disposing of the case. The authorities cited in the foregoing opinion sustain that proposition.

We also stated that: "The question of innocent holders in due course, without notice, is not presented on this record for the reason that the intervening complainants do not allege that they acquired their rights for value and *without notice.*"

We have held consistently since the decision in Moore et als. v. Clay, 7 Ala. 742, that one pleading that he is an innocent purchaser for value without notice must allege that he purchased for value and without notice, though he meets the burden by showing purchase and payment, and his adversary, if he would prevail, must show notice. This proposition is fully sustained by the authorities cited in the original opinion.

But appellants insist that White et al. v. Central Nat. Bank, 201 Ala. 298, 78 So. 74, lays down a different rule. We do not think so. The court there was not dealing with the sufficiency of the complaint in that case, but with the sufficiency of the defendants' pleas, and merely referred to the statute, now § 9078, which is part of the uniform negotiable instrument law, which provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That the instrument is complete and regular upon its face.

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"(3) That he took it in good faith and for value.

"(4) That at the time it was negotiated to him he had *no notice of any infirmity in the instrument or defect in the title* of the person negotiating it."

This statute which is merely declaratory of the common law, does not deal with procedural law as previously established.

However, in the light of this statute, a mere averment in pleading that the party is "a holder in due course," would be but a conclusion of the pleader. The statute specifies the elements that constitute

one a holder in due course, and the rule of this statute is not in conflict with the rules of good pleading as previously established.

■ But this aside, as stated in the original opinion, the case was submitted to the court on the limited issue "as to the validity vel non of the mortgage or deed of trust against the properties of the Alabama Public Utilities Company dated February 1, 1928, and the bonds secured thereby." If the deed of trust and bonds, applying the lex fori, are void, they were void ab initio, and in the hands of a holder in due course. Hanover National Bank v. Johnson, 90 Ala. 549, 552, 8 So. 42; Alabama Nat. Bank v. Parker & Co., 146 Ala. 513, 516, 40 So. 987; Id., 153 Ala. 597, 45 So. 161.

■ Appellants suggest that we did not comment on the fact that Martin and Company eventually transferred the properties in Alabama to the Southern Utilities Company. We stated this as a fact, but that was the consideration to the corporation for the purchase of its capital stock and became the property of the corporation. This property could not afterwards be used by Martin as a consideration for the issuance of the $200,000 in bonds. The corporation was a legal entity and when it became clothed with a tangible body in the form of valuable property it could not be owned by one individual, and carried around in his vest pocket. The law and public policy required it to have stockholders, a board of directors and officers, through whom it must function.

Opinion extended. Application for rehearing overruled.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.