These appeals arise from suits brought by materialmen pursuant to Code of Alabama 1975, § 35-11-218, to enforce liens against the "unpaid balance" due by a homeowner under contract.[1]
Following nonjury proceedings, the trial court entered judgments for the materialmen. We affirm.
On August 7, 1989, Scott and Deborah Wheeler entered into a contract with Davenport Companies, Inc., Davenport Property, Inc., Davenport Building Company, Inc., and James D. Davenport (all of whom we shall call "Davenport") for the construction of a house on the Wheelers' property in Tuscaloosa, Alabama. The original contract price of the Wheelers' home was $667,000. The Wheelers obtained a loan from Central Bank of the South ("Central Bank") for that amount; a "draw" or construction account was set up to pay approved draws on the loan.
The Wheelers hired Ray Harris as their architect and to oversee the construction project. Davenport hired several subcontractors and materialmen. Among the materialmen were Pinson Valley Millworks, Inc. ("PVM"), which supplied windows, doors, and moldings, and Marvin's, Inc., which supplied various building materials.
Davenport commenced construction in August 1989. On November 17, 1989, the Wheelers were notified that Davenport had gone out of business. On November 20, 1989, the Wheelers assumed the control of the construction of the house. Also on November 20, Marvin's served a lien notice on the Wheelers; on November 27, 1989, Marvin's filed a verified statement of lien in Tuscaloosa County Probate Court for $34,459.71. On November 22, 1989, PVM served on the Wheelers a lien notice; on November 30, 1989, PVM filed a verified statement of lien in Tuscaloosa County Probate Court for $17,217.91. The construction was 46 percent complete when Davenport ceased operation.
On November 24, 1989, the Wheelers completed the fourth application requesting additional money. The Wheelers received $60,000, and these funds were deposited into the construction account. As of November 24, there had been four draws on this account, totalling $304,465.
Marvin's and PVM allege that, notwithstanding the lien notices filed by them, the Wheelers used $35,238.75 of the $60,000 loan to pay certain subcontractors and a materialman for work performed before Davenport ceased operation. The Wheelers claim that in order to continue the construction work as scheduled, they were forced to pay in full some of the debts owing to the subcontractors and a materialman that pre-existed Davenport's termination. Those who were paid out of the $60,000 loan were:
1. K. Feltman, subcontractor — $ 3,501.00 2. Madison Masonry, subcontractor — $16,272.00 3. Lowery Electric, subcontractor — $ 9,467.00 4. J.F. Day, supplier — $ 5,998.75
These preferential payments totalled $35,238.75. The house was completed in May 1990, and the final cost was $741,176.
In December 1989, Marvin's and PVM filed complaints in the Circuit Court of Tuscaloosa County, Alabama, against Davenport, Central Bank, and the Wheelers. Both Marvin's and PVM sought to enforce their liens on the Wheelers' property for materials supplied to Davenport for construction of the Wheelers' house. *Page 63 
The two cases were consolidated for trial with suits filed against the Wheelers by two other lien claimants, Kilpatrick Concrete Company ("Kilpatrick") and Barnes Excavating Company ("Barnes"). On November 19 and 20, 1990, a nonjury trial was conducted on all four cases; the trial judge issued his initial judgment in favor of Marvin's and PVM and against Davenport and the Wheelers; in favor of Kilpatrick, and against the Wheelers; and in favor of the Wheelers and against Barnes.
On December 20, 1990, the trial court entered an order setting aside the judgment in favor of Kilpatrick and entered a judgment in favor of the Wheelers and against Kilpatrick. In addition, the court imposed liens against the Wheelers' property based on claims filed by Marvin's and PVM.
The Wheelers filed a motion to amend the judgment and a motion for new trial, and on January 28, 1991, the trial court entered a "Second Amended Judgment and Order On Motion for New Trial," which read as follows:
 "After considering [Wheeler's] motion for new trial, the Court amends its judgment as follows:
 "This Court amends its factual findings as follows:
 "The original contract price of the home was $667,000.00. The court finds that the home could not have been completed for the contract price, and the difference between the contract price and the actual reasonable and necessary price to complete the home should be deducted from the unpaid balance. The actual price to complete the home was $741,176.00. This figure included the following expenses not included in the original contract:
 Swimming Pool $22,500 Fence Around pool $ 7,000 Finishing Two additional Rooms $ 8,500 Unnecessary Christmas Bonus to Olmstead $ 1,000 Security $17,400 Fee to Pave Pro $ 1,500 Shutters Amount exceeded allowance $ 4,000 Survey 150 Extra for architect 950 Over allowance sprinkler system 600 ------- TOTAL expenses not in contract $63,650
 "If this sum is deducted from $741,176.00, the actual cost to complete the house as contracted is $677,526.00. The difference between $677,526.00 and the contract price is $10,526.00. The defendant Wheelers are entitled to have this sum deducted from the unpaid balance as previously ordered by this Court, i.e., $61,810.60 — $10,526.00 = $51,284.60
 "The lien notice filed by plaintiff [Marvin's] was for $34,459.71 and by plaintiff Pinson Valley Millworks Inc. was for $17,217.91. These plaintiffs are entitled to share the unpaid balance on a pro rata basis.
 "The sum total of the lien claimed by the plaintiffs is $51,677.62, which is $393.02 more than the unpaid balance. Liens are hereby established in favor of plaintiff [Marvin's] in the amount of $34,155.54 and in favor of plaintiff Pinson Valley Millworks, Inc. in the amount of $17,129.06. The previous judgments as last amended are to remain otherwise unchanged and the defendants' motion for new trial is overruled and denied."
Where the evidence is presented to the trial court ore tenus, as it was in this case, the trial court determines the weight and credibility of the testimony, and its findings are presumed correct and will not be disturbed on appeal unless the record reveals the evidence to be plainly and palpably wrong or manifestly unjust. Tibbs v. Anderson, 580 So.2d 1337, 1339
(Ala. 1991); Justice v. Arab Lumber Supply, Inc.,533 So.2d 538, 543 (Ala. 1988).
 "Under the 'ore tenus rule,' a presumption of correctness accompanies the trial court's judgment when it has made findings of fact based on oral testimony without a jury, and its judgment will not be reversed unless it is shown to be plainly and palpably wrong, considering all of the evidence and all inferences that can be logically drawn from the evidence. King v. Travelers Ins. Co., 513 So.2d 1023 (Ala. 1987); McCrary v. Butler, 540 So.2d 736
(Ala. 1989). The trial court's judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to *Page 64 
support the judgment. McCrary v. Butler, supra; Jones v. Jones, 470 So.2d 1207 (Ala. 1985)."
Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 12-13
(Ala. 1989).
In establishing a materialman's lien, the owner bears the burden of proving that the expenses from the unpaid balance have been used to complete the construction in accordance with the plans and specifications of the particular job. Justice v.Arab Lumber Supply, Inc., supra, at 545. The owner may not use the unpaid balance for expenses not contemplated in the original contract. However, this Court has held that in cases where the contractor has abandoned his duties, an owner is permitted to expend the unpaid balance for expenses not so contemplated, provided that the expenditures are for labor and materials that are necessary for the completion of the job according to the original contract. Id. at 544-45.
The Wheelers contend that the trial court used an improper analysis for determining the existence of the unpaid balance. The Wheelers allege that the unpaid balance amounted to $62,355, as opposed to the $61,810.60 found by the trial court. We have carefully examined the record in this case, and we affirm the trial court's finding that the Wheelers failed to carry their burden of proving that all of the expenditures in November 1989 were necessary for the completion of the construction of the house as contemplated in the original contract. The record reflects that the Wheelers made contract changes that increased the construction cost; these expenditures, which totalled $26,571.85, included:
1. $ 8,550.00 — Finishing two additional rooms 2. $ 1,000.00 — Christmas bonus to superintendent 3. $13,424.85 — Security service ($17,400 minus amount paid out of the Wheelers' personal account) 4. $ 1,500.00 — Fee paid to Pave Pro for patio 5. $ 847.00 — Excess for shutters ($4,000 minus amount paid out of the Wheelers' personal account) 6. $ 150.00 — Survey 7. $ 500.00 — Architect's additional fees ($950 minus amount paid out of the Wheelers' personal account) 8. $ 600.00 — Excess for sprinkler system
The trial court calculated the unpaid balance by adding the above amount of $26,571.85 to the amount of preferential payments of $35,238.75, for a total of $61,810.60.
The Wheelers also contend that the trial court erred by failing to give them credit for payments made by them to subcontractors and a supplier. We do not agree. The Wheelers' argument assumes that all of the suppliers who performed work or supplied materials would have filed liens if they were not paid. Only if the lien claimant has perfected its lien does Alabama law allow for proration of the lien. Alabama Code 1975, § 35-11-228.
Last, the Wheelers contend that the trial court erred by failing to give the Wheelers credit for payments made for security and architectural services. With regard to the 24-hour security service retained by the Wheelers, Mrs. Wheeler's testimony was directly contradicted by her superintendent's testimony on the issue of the necessity for such services. We therefore affirm the trial court's finding that this 24-hour security service was unnecessary.
The necessity of the architectural services was also contested at the trial. It is undisputed that a replacement architect was hired because the lender required it. We agree with the trial court's finding that the materialmen should not be prejudiced by a requirement of the Wheelers' lender.
For the foregoing reasons, the trial court's judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, STEAGALL and KENNEDY, JJ., concur.
[1] "Unpaid balance" means the "unpaid balance that the owner of the land owes the original contractor; it is not used in the context of referring to the unpaid balance that the original contractor owes the subcontractor or supplier." Justice v. ArabLumber Supply, Inc., 533 So.2d 538, 540 (Ala. 1988). *Page 65