PER CURIAM.
The plaintiffs, James D. Buckner and Donna J. Buckner, appeal from judgments in favor of the defendants, Alpha Lumber and Supply Company, Inc. (“Alpha Lumber”), River Bend Sod Farms, Inc. (“River Bend”), and Jenkins Brick Company (“Jenkins Brick”). This case involves debts to these defendants incurred by a contractor who built a house for the Buckners.
*452 In 1990 the Buckners contracted with Billy Mansel Builders, Inc. (“Mansel Builders”), through Billy Mansel,[1] for the construction and purchase of a house. As part of the contract, the Buckners agreed to pay $167,-900, and Mansel Builders agreed that it would provide the Buckners with a particular lot, build a house thereon to certain specifications, pay certain closing costs, and pay a real estate agent’s commission. Mansel Builders was to be paid the $167,900 in increments roughly representing the degree of completion of the work as the construction progressed.
By the time Mansel Builders had completed approximately 90 percent of the construction and had been paid $126,415 of the $167,-900 purchase price, the relationship between the Buckners and Mansel had soured. The contract of the parties was terminated, Man-sel Builders ceased work on the project, and the Buckners made no further payments to it.
The Buckners contracted with another builder to finish the construction for approximately $16,722.
During Mansel Builders’ period of construction, Billy Mansel had purchased building materials for the Buckner project from the defendants. Ultimately, neither Mansel or Mansel Builders paid for these building materials. The defendants, Alpha Lumber, River Bend, and Jenkins Brick, all filed ma-terialman’s liens against a purported “unpaid balance” of $25,763 on the Mansel Builders contract with the Buckners (the difference between the $42,485 owing on the contract, and the $16,722 contract price to finish the construction), and also “full price” liens for the entire amount claimed by each.
In response, the Buckners filed a declaratory judgment action against the defendants, to determine the validity of their claims. Following a nonjury trial, the court issued an order stating that, based on ore tenus evidence, it determined that $15,137.20 was owed Alpha Lumber, $3,140.80 was owed Jenkins Brick, and $1,177.80 was owed River Bend. The trial court entered judgments against the Buckners personally for the full amounts owed, plus interest and court costs. The court determined also that the defendants held properly perfected materialman’s liens on the unpaid balance of the Mansel Builders contract. It found the unpaid balance subject to the hens to be $25,763. Implicit in this finding was a determination that of the approximately $42,485 owing on the Mansel Builders contract, only $16,722, the amount of the contract to finish construction, could properly reduce the amount of the unpaid balance subject to the hens; $42,485 owing on the Mansel Builders contract, less the $16,722 to complete construction, equals an unpaid balance subject to Hens of $25,763.
The Buckners appeal, arguing specifically that: 1) River Bend had not properly perfected an “unpaid balance” hen and was not, therefore, entitled to an unpaid balance hen; 2) that the “unpaid balance” subject to the Alpha Lumber and Jenkins Brick hens was wrongly determined; and 3) that the court erred in entering judgments against the Buckners personahy for the debts owed, because, as is undisputed, there was no contract between the defendants and the Buck-ners and, therefore, although the defendants’ claims could attach in rem, the Buckners could not be held personally hable.
As to an “unpaid balance” hen, Alabama Code 1975, § 35-11-210, permits the creation of a hen in the amount of the unpaid balance due to the contractor from the purchaser/owner. See Pinecrest Apartments, Ltd. v. R.P. McDavid Co., 535 So.2d 126, 127 (Ala.1988). The enforcement of such a hen, however, depends upon strict comphance with the materialman’s hen provisions, found at § 35-11-210 et seq. Id.
Given this rule, we agree with the Buckners that the trial court erred in imposing an unpaid balance- hen in favor of River Bend. It is undisputed that River Bend did not give notice of the hen to the Buckners before it was filed, as is required by § 35-11-218. Thus, as to the unpaid balance hen in favor of River Bend, we reverse and render a judgment in favor of the Buckners.
*453 As to the monetary awards against the Buckners, we also agree with the Buck-ners that the trial court erred. Where, as here, there is no express or implied contract between the owners and any materialman, the claims can attach to the property, hut cannot apply to the property owners. Ex parte Grubbs, 571 So.2d 1119 (Ala.1990). Accordingly, as to the judgments against the Buckners personally, we reverse, and a judgment is rendered for them.
This brings us to what Alpha Lumber has referred to as “[t]he real bone of contention in this case,” the amount, if any, of the “unpaid balance” on the Mansel Builders contract, to which unpaid balance liens in favor of Jenkins Brick and Alpha Lumber could attach.
In determining the “unpaid balance” to which a materialman’s lien can attach in a situation such as this, one looks to the amount the owner would owe on the original contract, if it were performed, less certain of the owner’s expenses in obtaining the completion of the project. Wheeler v. Marvin’s, Inc., 593 So.2d 61 (Ala.1991). The parties agree that $16,722, the contract price for finishing construction, is such a deductible expense. The Buckners argue, however, that nonconstruction expenses would also reduce the amount of the unpaid balance a lien could attach to. In this regard, they refer to undisputed evidence that the original contract provided for Mansel Builders to pay, for example, a real estate commission of $8,300, which the Buckners had to pay to complete the project. The Buckners argue that because their payment of noneonstruction expenses contemplated in the contract was necessary to complete the project as originally agreed, these expenses should reduce the, amount subject to liens.
Based on the following language from Wheeler, Jenkins Brick and Alpha Lumber argue that the trial court did not err in calculating the unpaid balance to which their liens could attach, because such an amount could only be reduced by the cost of labor and material necessary to complete construction, here $16,722.
“In establishing a materialman’s lien, the owner bears the burden of proving that the expenses from the unpaid balance have been used to complete the construction in accordance with the plans and specifications of the particular job. The owner may not use the unpaid balance for expenses not contemplated in the original contract. However, this Court has held that in issues where the contractor has abandoned his duties, an owner is permitted to expend the unpaid balance for expenses not so contemplated, provided that the expenditures are for labor and materials that are necessary for the completion of the job according to the original contract.”
593 So.2d at 64. (Citations omitted.)
As indicated, the question here is whether expenses to complete nonconstruction matters provided for in the original contract reduce the “unpaid balance” to which a lien can attach.
The above-quoted language from Wheeler first indicates that an owner can expend the unpaid balance, and thereby reduce the amount subject to unpaid balance liens, “to complete the construction in accordance with the plans and specifications of the particular job.” Note that this does not address whether the owner can expend the unpaid balance for completing the contractor’s duties as to nonconstruction matters, such as those in issue here.
Second, Wheeler addresses the situation where the contractor has abandoned “his duties” and labor and materials expenses not previously contemplated “are necessary for the completion of the job according to the original contract.” 593 So.2d at 64. (Emphasis added.) In Wheeler, the court examined labor and materials expenses that had not been previously contemplated, in terms of whether they were “necessary” to the completion of the job as a whole according to the contract, e.g., security services at the job site, not as to whether they were necessary to finishing the actual construction work only.
This second situation discussed in Wheeler differs from the situation here, in that in this case the expenses in question for non-con-struetion matters were contemplated in the original contract. Implicit in this Court’s *454 holding in Wheeler, however, is the assumption that a unpaid balance subject to liens would be reduced by specific expenses contemplated in the contract — a part of the job according to the original contract. Certainly, if the law permits a reduction in the amount of the unpaid balance subject to liens for expenses not contemplated in the original contract but necessary to complete the total project, i.e., not just actual construction, the law would permit such a reduction by expenses specifically provided for in the original contract, and therefore, necessary to complete the job as planned. See Wheeler, 593 So.2d at 64.
We hold that the trial court erred in failing to reduce the unpaid balance subject to liens by the noneonstruetion expenses contemplated in the Mansel Builders contract. These costs, in addition to the $16,722 in construction costs implicitly found by the trial court to reduce the unpaid balance subject to liens, would further reduce the amount subject to liens. We remand this cause for the entry of an order consistent with this holding.
As to the trial court’s implicit finding that the construction costs to finish the project were $16,722, we note that there is evidence that would support such a finding, and the trial court would certainly have been within its discretion in rejecting the contention that such construction expenses proven by the Buckners exceeded $16,722. Although, as the Buckners argue, there is contested evidence suggesting that a slightly higher amount was expended, the trial court determines the weight and credibility of evidence presented ore tenus, and its findings are presumed correct absent the reviewing court’s determination that they were plainly and palpably wrong. Wheeler, 593 So.2d at 63.
REVERSED AND JUDGMENT RENDERED IN PART; REVERSED AND REMANDED IN PART.
HORNSBY, C.J., and MADDOX, SHORES, KENNEDY and HOUSTON, JJ., concur.

. Billy Mansel was evidently the president of Mansel Builders and its majority shareholder.