BRYAN, Justice.
Corner Stone Funeral Chapel, Inc. (“Corner Stone”), appeals from a judgment ordering a receiver to transfer the assets of a cemetery business to MVMG, LLC, a competitor of Corner Stone’s. We affirm.
Mountain View Memory Gardens & Mausoleum, Inc. (“the corporation”), owned a cemetery in Rainsville known as Mountain View Memory Gardens and Mausoleum (“the cemetery”). The corporation sold “preneed contracts” to people planning to be interred at the cemetery or planning to have loved ones interred there. A purchaser of a preheed contract pays for funeral merchandise, funeral services, cemetery merchandise, or cemetery services that will be provided upon a person’s death. § 27-17A-2(57), Ala.Code 1975. Preneed contracts in Alabama are regulated by the Preneed Funeral and Cemetery Act, § 27-17A-1 et seq., Ala.Code 1975 (“the Preneed Act”), which was enacted in 2002.
Jeanette Mince was the sole owner and officer of the corporation, and she apparently ran the corporation and the cemetery. Mince died in 2008, leaving the corporation to her two daughters. However, her daughters were not interested in operating the corporation, and they expressed an intention to disclaim any interest in it. After Mince’s death, the corporation failed to renew its certificate permitting it to sell preneed contracts under the Preneed Act. In 2009, the Alabama Department of Insurance (“the Department”) investigated the corporation’s records and discovered that the corporation was in poor shape. The Department found that the corporation had underfunded certain trust funds required to be established by the Preneed Act, that the corporation was insolvent, that the' corporation had ceased doing business, and that the cemetery had effectively been abandoned. The Department found that the continued control of the cemetery by the corporation would be hazardous to preneed-contract purchasers and beneficiaries in particular and to the people of Alabama in general.
Based on the Department’s findings, Jim Ridling, in his official capacity as the commissioner of the Department, filed a complaint against the corporation, seeking preliminary and permanent injunctions. Relying on provisions in the Preneed Act, Ridling asked the trial court to enjoin the corporation from conducting business or disposing of its assets. At the time of the trial, those assets consisted of the cemetery, a mausoleum at the cemetery, some property next to the cemetery, a building *628 and storage structure at the cemetery, and less than $26,000 in cash. Ridling also asked the trial court to appoint a receiver to take control of the corporation and eventually to liquidate and dissolve the corporation, subject to the trial court’s supervision.[1]
In June 2009, the trial court entered a preliminary injunction, essentially enjoining the corporation from operating; the order also appointed Denise Azar, an employee with the Department, as receiver for the coi’poration. The trial court directed Azar to take possession of the corporation’s assets and to attempt to liquidate those assets, subject to the trial court’s approval. The trial court also authorized Azar to enter into agreements for the management and maintenance of the cemetery until the cemetery could be sold or otherwise liquidated. Shortly after she was appointed receiver, Azar arranged for Rainsville Funeral Home, Inc., a local funeral business, to mow, trim, and clean the cemetery; to locate grave spaces; to open and close graves for burials at the'cemetery; and to place markers and monuments during the receivership period. Rainsville Funeral Home has performed those services since sometime in 2009.
During the receivership period, the mausoleum located, at the cemetery continued to fall into disrepair. The roof was rotten ■ and leaking, and parts of the mausoleum’s interior had been badly damaged by leaking water, including the ceiling, flooring, and furniture. Vandals had broken into the mausoleum and further damaged it. Elsewhere in the cemetery, graves had been driven over and there was some other evidence indicating that the cemetery was in a generally run-down condition. In response, individuals owning plots and vaults in the cemetery formed the MVMG Mausoleum Association (“the Association”) during the receivership period to preserve the cemetery. The Association collected donations from the community and, with Azar’s permission, made substantial repairs to the mausoleum. The Association eventually intervened in the underlying case.
Azar unsuccessfully attempted to find a buyer for the cemetery, and she eventually concluded that the cemetery was unmarketable. Azar recommended that the cemetery and the corporation’s other assets be transferred to an entity that would both operate the cemetery and honor, either in whole or in part, the corporation’s approximately 1,155 outstanding preneed contracts. The extent of outstanding services and merchandise purchased in those pre-need contracts is unknown; typically a preneed contract covers only a portion of the services and merchandise available. Two entities presented proposals to Azar seeking the transfer of the assets, of which the cemetery is the main asset: Corner Stone and MVMG, LLC (“the LLC”); both of those entities were allowed to intervene below.
The LLC was formed in 2011 by Keary Chandler, the owner of Rainsville Funeral Home, which, as noted, provided maintenance and services at the cemetery during the receivership period. At times, the trial court treated the LLC as synonymous with Rainsville Funeral Home and Chandler, which appears to be a useful observation for purposes of this Court’s review. The differences between the two proposals *629 was fleshed out at trial and will be discussed in more detail below. One primary difference is that Corner Stone, unlike the LLC, agreed to provide, at no extra cost, markers and monuments that had already been purchased in outstanding preneed contracts. Azar recommended that the trial court accept Corner Stone’s proposal. Following an ore tenus trial on the issue held in 2013, the trial court disagreed with Azar and decided to accept the LLC’s proposal. Thus, the trial court entered a permanent injunction that, among other things, ordered Azar to transfer the corporation’s assets to the LLC.
The trial court’s order did not completely dispose of the case; the order noted that the trial court would schedule a final hearing to resolve issues concerning any claims of creditors against the corporation and any other pending issues. Corner Stone subsequently moved the trial court to certify its order transferring the assets to the LLC as a final judgment under Rule 54(b), Ala. R. Civ. P. The trial court certified the order as final under Rule 54(b), and Corner Stone appealed.[2]
The parties disagree as to the proper standard of review. The trial court received ore tenus evidence at trial. The LLC argues that the ore tenus standard of review applies; conversely, Corner Stone argues that the evidence before the trial court was undisputed and that therefore our review is de novo.
The ore tenus standard applies. Corner Stone’s assertion that the evidence is undisputed is contradicted by the record. As noted, one difference between the two proposals is that Corner Stone, unlike the LLC, agreed to provide, at no extra cost, markers and monuments (collectively “markers”) that had already been purchased in outstanding preneed contracts. William Dalton, Corner Stone’s owner, estimated at trial- that assuming liability for the markers would cost Corner Stone about $60,000. However, Chandler, the owner of the LLC and of Rainsville Funeral Home, estimated that providing the markers would cost Corner Stone “more like $150,000.” Chandler also questioned the economic feasibility of Corner Stone’s proposal; when asked about the LLC’s proposal, Chandler indicated that to “do otherwise,” ie., to provide the markers as Corner Stone proposed, would be unwise and economically unfeasible. However, Dalton obviously did not think that Corner Stone’s proposal was unfeasible. It is unclear how many markers had already been paid for in the outstanding preneed contracts. Both Dalton and Chandler could only estimate the total cost of the markers — however many there are — and they disagreed on the economic feasibility of providing the markers at no cost to the preneed-contract holders. Of course, evidence pertaining to the markers is relevant in evaluating the two proposals. The evidence regarding the markers was disputed, thus defeating Corner Stone’s argument that the ore tenus standard does not apply because, it says, the evidence is undisputed.
“[A] judgment based on findings of fact based on [ore tenus] testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.” Allstate Ins. Co. v. Skel *630 ton, 675 So.2d 377, 379 (Ala.1996). Further, “[w]here the evidence is presented to the trial court ore tenus, ... the trial court determines the weight and credibility of the testimony.” Wheeler v. Marvin’s, Inc., 593 So.2d 61, 63 (Ala.1991).
Further, in attempting to convince this Court to review the judgment de novo, Corner Stone ignores the fact that the trial court’s decision involved a matter within its discretion.[3] At its heart, this appeal concerns the trial court’s handling of a receivership, which is an equitable remedy. “A receiver is an impartial officer of the court” who is “appointed to collect and preserve property and at the direction of the court to dispose of it and its proceeds.” Ally Windsor Howell, Tilley’s Alabama Equity § 31:l(a) (5th ed.2012). Generally, “[t]he court has the discretion in receivership proceedings to do what is best for all concerned.” 65 Am-.Jur.2d Receivers § 135 (2011). This Court has stated that a trial court may order the sale of properties possessed by its receiver “when, in the exercise of judicial discretion, such sale is deemed to the best interest of those concerned.” Barley v. Alabama Pub. Utils. Co., 236 Ala. 463, 465, 183 So. 447, 448 (1938). Although this case concerns the transfer of assets instead of a sale (the cemetery was determined to be unmarketable), the same general principle regarding receiverships applies: the trial court has the discretion to do what is in the best interest of those concerned. See also Seiple v. Mitchell, 239 Ala. 533, 535, 195 So. 865, 865 (1940) (stating, regarding the compensation given to the receiver by the court, that that was a matter “primarily within the sound discretion of the court having the custody and control of the receivership, having regard to all the relevant circumstances”). Here, those concerned with the fate of the cemetery include not only the preneed-contract holders, but also the general public, especially the local community. Note that § 27-17A-17(b), Ala.Code 1975, allows the commissioner of the Department to seek liquidation of a cemetery business when its continued operation would be hazardous either to preneed-contract “purchasers [or] beneficiaries, or to the people of this state.”
In this case, the trial court was free to manage the receivership within its discretion. Our review of the trial court’s judgment is limited to determining whether the trial court exceeded that discretion.
“ ‘A court exceeds its discretion when its ruling is based on an erroneous conclusion of law or when it has acted arbitrarily without employing conscientious judgment, has exceeded the bounds of reason in view of all circumstances, or has so far ignored recognized principles of law or practice as to cause substantial injustice.’ ”
Wright Therapy Equip., LLC v. Blue Cross & Blue Shield of Alabama, 991 So.2d 701, 705 (Ala.2008) (quoting Edwards v. Allied Home Mortg. Capital Corp., 962 So.2d 194, 213 (Ala.2007)). The discretion afforded the trial court is only strengthened by the ore tenus presumption in this case. Given our deferential review, this is a straightforward appeal in which the judgment is due to be affirmed.
Certainly there is evidence supporting both Corner Stone’s and the LLC’s proposal. For instance, on the Corner Stone side, Azar (the receiver) concluded that Corner Stone had the better *631 proposal, and she recommended that the trial court accept it over the LLC’s proposal. Azar based her opinion on the fact that Corner Stone, unlike the LLC, agreed to provide any markers that had already been purchased in outstanding preneed contracts at no additional cost to the pre-need-contract holders. Azar concluded that this fact made Corner Stone’s proposal a better deal for the preneed-contract holders, and that settled the issue for her. At trial Azar testified that, besides the marker issue, there were no other differences between the proposals. However, the evidence indicates otherwise, and that fact may have undermined the strength of Azar’s opinion in the view of the trial court.
Chandler highlighted other differences between the proposals, one of which involves the endowment-care trust fund and the use of remaining funds held by the corporation — less than $26,000. The Pre-need Act requires each cemetery business to maintain an endowment-care trust fund to provide for the endowment care of the cemetery it operates, ie., the maintenance and any repairs. § 27-17A-47 and § 27-17A-2(27), Ala.Code 1975. Regarding the endowment-care trust fund, the Preneed Act, at the relevant time, provided that “[t]he amount of each bond shall be a minimum of ... $25,000.” § 27-17A-47 (as it read before a 2014 amendment). Chandler testified that, if the LLC were awarded the assets of the corporation, the LLC would place $25,000 of the remaining funds immediately into the endowment-care trust fund. Conversely, Dalton testified that, if Corner Stone were awarded the assets, Corner Stone would place $8,971.52 of the remaining funds into the endowment-care trust fund and then deposit a minimum of $5,000 per year until the balance reached $25,000.
Chandler’s plan to fully fund the endowment-care trust fund immediately was cited as a factor weighing in the LLC’s favor by Janice Gilbert, one of the Association members who testified at trial. Gilbert holds a preneed contract, and her late husband is buried in the cemetery. Gilbert testified that she wants Chandler and the LLC to take control of the cemetery. She testified that Chandler had taken care of her husband’s funeral; that she trusted Chandler’s family (Rainsville Funeral Home is family-run); and that Rainsville Funeral Home is more conveniently located than Corner Stone’s funeral home, which is located in Ider.
Gilbert and others discussed the need for financial stability in the future operation- of the cemetery. Gilbert noted that Mince, the corporation’s previous owner, had experienced financial difficulties and had had trouble providing markers that had already been purchased in preneed contracts. Regarding her own experiences, Gilbert testified that she could not get the marker for her late husband’s grave site that they had purchased in a preneed contract and that she eventually had to buy a cheaper one instead. Based on Mince’s track record, Gilbert was doubtful that Corner Stone would be able to absorb the cost of providing the markers purchased in the outstanding preneed contracts. As noted, Chandler opined that Corner Stone’s plan to provide the markers at no cost to the preneed-contract holders was not economically feasible. The trial court was free to find Chandler’s testimony more credible than Dalton’s on this issue. Deborah Thomas, the president of the Association, testified about the substantial repairs the Association made to the mausoleum after the corporation became insolvent and the mausoleum was allowed to fall into disrepair. She said that, before the Association made the repairs, the condition of the mausoleum had *632 become an embarrassment to the community. See, e.g., Editorial, “Fixing a Disgrace,” Times-Joumal (Ft. Payne), June 5, 2013 (describing the situation at the cemetery as a “disgrace” and an “embarrassing problem”). Both she and Hubert Tumlin, the treasurer of the Association, testified that they did not want to go through such an ordeal again. Concern in the community about future financial stability for the cemetery was a key issue expressed at trial; the trial court, in evaluating this concern, was free to place more weight on evidence, such as Chandler’s testimony, questioning the economic feasibility of Corner Stone’s proposal.
Other evidence supports the trial court’s decision as well. At the time of the trial, - Chandler had approximately 17 years’ experience operating the cemetery in Rainsville and approximately 34 years’ experience in the funeral-home business. Dalton, although quite experienced, seems to have less experience. At trial, he testified that Corner Stone acquired its first cemetery about 4 or 5 years ago and had since acquired 2 more cemeteries; he also stated that he had served as a trustee and taken care of a couple of private cemeteries for the last 10 to 12 years. Although Dalton did not state how long he had been in the funeral-home business, he did state that Corner Stone’s funeral-home business had existed for about 15 years. Chandler noted that his funeral home is located closer than is Corner Stone’s funeral home to the cemetery (both Chandler’s funeral home and the cemetery are in Rainsville). Chandler already has experience working at the cemetery. Pursuant to the agreement with Azar, during the receivership period, which began in 2009, Chandler’s funeral home has been opening and closing graves and maintaining the cemetery grounds. Chandler testified that he plans to have someone live in the house at the cemetery, which, he said, would deter vandalism (which has been a problem) and make maintaining the cemetery easier. Corner Stone did not make a similar offer. Chandler’s experience in the community, the location of his funeral home, his recent dealings at the cemetery, and his plan to have someone live at the cemetery are factors supporting the trial court’s decision. Although the LLC did not offer as much as Corner Stone in providing the markers already purchased in outstanding preneed contracts, Chandler did testify that the LLC would provide markers to preneed-contract holders at wholesale cost, . diminishing the strength of the major selling point for Corner Stone.
We cannot say that the trial court exceeded its discretion in ordering the transfer of the corporation’s assets to the LLC. Thus, we affirm.
AFFIRMED.
MOORE, C.J., and PARKER, SHAW, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs specially.
STUART and BOLIN, JJ., dissent.

. Ridling acted under § 27-17A-17(b), Ala. Code 1975, a part of the Preneed Act. That section provides:
"The commissioner may apply for an order directing the commissioner to liquidate a [preneed] certificate holder ... when, in the commissioner’s opinion, the continued operation of the certificate holder would be hazardous either to purchasers, beneficiaries, or to the people of this state.”

. Corner Stone filed an appellant’s brief and reply brief, and the LLC filed an appellee's brief. Ridling filed a brief ostensibly as an appellee, but that brief urges this Court to reverse the trial court's judgment. In substance, Ridling’s brief is an appellant’s brief, but Ridling never filed a notice of appeal, and Corner Stone’s notice of appeal lists only Corner Stone as an appellant. Thus, in fact there appears to be only one appellant (Corner Stone) and one appellee (the LLC).

. In its initial brief, Corner Stone mentions in the ‘'facts” section that it argued to the trial court that the court had exceeded its discretion in transferring the assets to the LLC. That appears to be the only reference in Corner Stone’s briefs to the trial court’s exercise of its discretion.